Sedgwick, J.
The first question that presents itself is, What was the intention of the testator, as to the annuity, which he gave, by *143 his will, to his wife ? was it to continue for her life ? or, if she should marry, only during her widowhood ? If that intention can be discovered, it must be carried into effect, if it can be done consistently with the rules of law.
In investigating the meaning of the testator, every part of the will, in relation to the subject of inquiry, must be taken into consideration.
The bequest is made in the following words: “ Likewise I give and bequeath to General John Winslow, of said Boston, Esq., thirty thousand dollars, in trust, nevertheless, to the sole use, benefit, and behoof of my said wife, * during her widow- [ * 174 ] hood and, life; and if the said John Winslow shall die, living the said Mary, it is my will that the trust aforesaid shall pass to and vest in Jeremiah Belknap, of said Boston, if then living, his executors and administrators ; but in case the said Jeremiah die, living the said John Winslow, then that the said trust be in him, the said John Winslow, his executors and administrators.” It then declares that the principal sum shall be so invested as, in the opinion of the trustees, to promise the greatest benefit and advantage to her for whose use the trust is created; and it then directs the proceeds of the fund to be paid to her.
The words of a testator, favorable to the claims of a legatee, are to be liberally and beneficially construed; and the bounty ought to be extended as far, at least, as the express words of the bequest necessarily carry it; and it is an additional consideration for such a construction in this case, that the bequest was in favor of a wife, who enjoyed the affection and confidence of the testator. When, then, the bequest is declared to be for her benefit during her taidowhood and life, was there nothing more, however difficult it might be to conjecture a reason for mentioning her widowhood at all, it might be reasonable to believe, that it was the intention, that it should continue to the utmost extent, to which the testator had declared that it should — during her natural life. This construction might also derive strength from a consideration of the provision, which is made for a successor to General Winslow, in the trust, if he should die during the life of the wife ; and further support might perhaps be given to such a construction, from the direction in an after-part of the will, to the guardian of the testator’s son, to pay particular attention to all the real estate devised to him, and which might, by the death of his mother, come into his possession. For although the dower of his mother would by her death come into his possession, yet as the capital of the bequest under consideration might be vested in real * estate, that also [*175 | might be in the mind of the testator, and it might be *144 contemplated by him, as not coming into his possession until after her death ; and thence it might be inferred, that it was intended to be appropriated to her use during her life.
But taking the whole will together, I do think that it was the manifest intention of the testator, that the annuity should cease with the widowhood of Mrs. Gray.
In the first place, it is a rule of construction, that if it can bo done, all the words of an instrument shall be supposed to have a meaning, and that none were used insignificantly. Now, if the intention of the testator was, that the annuity should, at all events continue during life, every thing that is said relative to the widow hood of the annuitant is without any meaning. It would, then, from this just rule of construction, seem probable, by the expressions first used, designating the continuance of the annuity, that the intention was to make a provision, to continue during widowhood; whether it should terminate by marriage or by death. It was to be for her benefit during her widowhood and life. But, when, proceeding further on, we observe that she was to receive that bounty through the medium of a trust, and that the bounty and trust are to be commensurate in duration, (which is certainly the case,) if by the words, in which the annuity is given, there is doubt, whether it was intended that the annuity should continue at all events during life, or should cease, in the event of the annuitant’s marriage, with her widowhood; and if it is certain, that by the words descriptive of the duration of the trust, that the trust is expressly to cease with the widowhood, what before was doubtful will be rendered evident, — that the annuity was also to cease with the widowhood.
The intention of the testator, as to the duration of the trust, is expressed in these words: “ The trust hereby raised and created, to cease with the widowhood of the said Mary, and to [* 176 ] expire at her death.” When, then, the * annuity is dependent on the trust, and the former cannot continue any longer than the latter, and when the testator has expressly declared his intention that the trust shall “ cease with the widowhood of the said Mary,” it follows, to my mind, as an irresistible consequence, that with her widowhood the annuity also should expire.
It is said that by the word then, used in the paragraph immediately succeeding that which has been last mentioned, it is apparent that the annuity was in any event to continue during the life of Mrs. Parsons. The words alluded to are, “And the said thirty thousand dollars, in whatever form it may then be, whether in cash, stocks, real estate, or all three of them, I do hereby give and bequeath to my son herein named.” It is said that the word then refers only to the last event above mentioned, that is, the *145 decease of the annuitant, and shows that, although the testator had said that the trust was to cease with her widowhood, and expire at her death, it truly meant, that it should continue during life.
I know no rule that will justify or authorize the construction contended for; but I think that the word then must be understood to refer to whichever event should first happen. If one promises another, that if he will pay him one hundred dollars, or deliver him one hundred bushels of wheat, he will then deliver to him his horse, the word then refers to either part of the alternative.
It seems to me, from other parts of the will, that the testator had constantly in his mind a distinction between the widowhood and the life of his wife; and that he well knew how to express, in proper language, an estate for life, when such was his intention. He gives an estate to Anthony Gray, “ during his natural life ; ” and another to Bethiah Paine, “ for and during the term of her natural life.” And not only in the distribution of his bounty among others, but where it was intended for the life of his wife, it is so expressed, The first devise in the will is in these words: “ I give, and bequeath, and devise, to my beloved wife Mary, [* 177 J one third part of all my real estate, for and during her natural life, she keeping and maintaining the same in good repair.” Thus, when it is so intended, a life estate is created by clear and unambiguous language; but when a different intention is enter tained, different language is employed; and the use of language so different is, to my mind, pretty strong evidence of a different intention. The next provision in the will to that last recited is in these words: “ I also give and bequeath to my said wife all the household furniture which I may own at my decease, saving and excepting that part which is made up of plate; it being my desire that that should continue in the family, I give and bequeath to my said wife the use of the said plate during widowhood and life.” The manifest intention here was, that the legatee should have the plate during life, if she did not marry, but that, if she should marry, the plate should not be carried out of the family. In other words, it was a gift for life, if she did not marry, and during widowhood, if she did ; and this intention is expressed, in substance, in the same manner as the béquest under consideration. And why should not the same construction be given to the latter as is manifestly proper for the former ?
That the event of his wife’s future marriage was all along in the mind of the testator, is further apparent from another part of the will, by which it is provided, that she should have his dwelling-house, free of rent, during the minority of his son, if she should so long remain unmarried
*146 It was said in the argument, that, upon this construction, the word life is used without any meaning. But that is not true; although it is true that it expresses only what would otherwise be implied. And it will be sufficient to notice, in answer to this observation, that there is nothing more common, both in speaking and in writing, than to express what the mind clearly perceives to be implied. She would, by the gift during widowhood, if she did not [ * 178 ] marry, enjoy during * life; and this being the intention, it was natural to express it.
On the whole, I think it impossible not to conclude, that it was the intention of the testator, that this provision for his wife should cease with her widowhood.
There is another question, — whether this intention, under this will, can be carried into effect, consistently with the rules of law.
The real intention of the bequest was for the life of the wife, on condition of being void in the event of her marrying. Had this been a condition precedent, it would have defeated the gift. (5)
But when the condition is subsequent, as this is, and the legacy is not given over, it is considered merely in terrorem, and the condition is void, because it puts a restraint upon matrimony, which ought not to be discouraged. (6) But if the legacy be given over, the limitation may take effect.
The only question, then, which remains to be considered, is, whether <his legacy is given over in such manner as to give efficacy to the intention, that it should cease with the marriage of the wife.
Immediately after the words in the will, expressive of the duration of the annuity, it goes on in these words : “ And the said thirty thousand dollars, in whatever form it may then be, whether in cash, stocks, or real estate, or all three of them, I do hereby give to my son herein named.” Is this such a giving over of the legacy as will give effect to the expressions in the will limiting its duration ?
It is a rule of law, that to give a thing to the person to whom the law gives it, and in the same manner, is as if it had not been given; so that a devise or bequest to a person to whom the law would give the same thing in the same manner, is utterly void. (7)
Now, as the son here mentioned is the sole heir, as to the real estate, and the sole representative, as to the personal estate, | * 179 ] of the testator, the giving over to him made * no alteration in the disposition of the estate from what the law would have done, and consequently does not bring the case with *147 in the rule by which efficacy is to be given to the expressions in the will, limiting the duration of the legacy in the event of mar riage. But this opinion goes upon the hypothesis, that the son would take by the will the estate, in the same manner that he would have taken it by law. Now, the testator contemplated that the capital sum might, at the time when he intended it should cease to be a provision for his wife, be invested, or a part of it, at least, in real estate; and there are no words by which an estate of inheritance is given ; and in every other part of the will, where a fee, or a less estate, is intended, it is expressed. If it was intended that the son should take only an estate for life, in such real estate as might be purchased in fee with the thirty thousand dollars, or part of it, then it was meant to make a disposition different from what the law would have done, and, of consequence, the rule above mentioned, whereby legacies and devises are made to terminate in the event of marriage, will apply.
But I am satisfied that it was the intention of the testator to give the whole fund, in whatever it might be invested, and as it should happen to he invested, to the son; and, if so, the declared intention of passing it over is wholly inoperative and void. It is like that devise in the will, by which the testator gives all his real estate to his son, his heirs and assigns forever. I think he intends to give the whole fund, however it might be invested; because he shows a manifest intention to dispose of all his estate; and there is no supposable motive why he should leave a remainder in this undisposed of.
There is another clause in the will, in which the testator declares his intention in these words: “ And in case my said son should die before he attains the age of twenty-one years, and without issue, male or female, then I give, devise, and bequeath, to Jane Paine and her heirs forever, all the estate, real, personal, and mixed, here by given, devised, and bequeathed, to my said son.”
* It only remains to be determined, whether this is [ * 180 ] such a giving over as will by law give effect to the limitation under consideration. And I think it is not. It is an estab lished rule, that a bequest over, to give effect to such a limitation, must be an express bequest of the particular legacy, and that a bare gift of the residuum will not be sufficient. (8) This has frequently been decided ; but I will mention only two cases. In the* case of Garratt vs. Pretty, (9) Pretty, by his will, gave 30007. to his daughter, the plaintiff’s wife, at twenty-one years or marriage; provided, if she married without the consent of his friend Mr. S., *148 her legacy was to cease, and she to have 500?. only, and made his son, the defendant, executor and residuary legatee. The daughter married without the consent of Mr. .S'.; yet the whole 3000?. were decreed, because it was not expressly devised over, but fell into the surplus. And there was the same determination in the case of Wheeler vs. Bingham, (10) and for the same reason.
In the case at bar, the legacy, first given to the wife, was not specifically and expressly bequeathed over to Jane Paine, but was bequeathed over in the same devise and bequest, and by the same words, as the other property, real, personal, and mixed, which before had been devised and bequeathed to the son. This reasoning may perhaps be deemed merely artificial; but it is founded in authority, and is the known law ; and I am not sorry that the rule has been established, because it is a liberal check upon dispositions, where they exist, to make testamentary provisions in restraint of matrimony.
There is another well-established principle, by which the bequest over to Jane Paine is prevented from giving efficacy to the limitation under consideration. The principle is, that the bequest over, to give it the effect now under consideration, must be immediate, so as to take effect at the time of the marriage, The estate, by this will, is to go to Jane Paine only in the event of the death of the son before twenty-one years of age, without issue [ * 181 ] and * unmarried. The bequest to her, therefore, is not immediate. In the case of Doe vs. Freeman & Ux., (11) this principle is recognized and established. In that case, William Warraker devised the premises to his wife for life; but in case she married a second husband, then he gave them over to his nephew, John Surry, when he should attain his full age of twenty-three years, on condition of paying certain legacies, within a limited time after he should have got the possession. It will be perceived how much this case resembles the one before the Court. In the case cited, after stating the settled principle, that limitations in restraint of marriage are not to be favored, it is said by the court, that, “ wherever an estate is given to a widow for life, provided she shall not marry, unless there be a devise over immediately, it is merely in terrorem.” The bequest over to Jane Paine cannot, then, operate to give efficacy to the intended limitation, as well because it is not immediate, as because it is not an express bequest of the particular legacy.
As an original question, perhaps it would have been more consonant with reason, to have determined, in the first instance, that *149 no bequest over should be sufficient to divest a widow of property given to her for life, on condition of her not marrying. But it is not necessary, for the decision of the case before us, to examine that principle, nor whether it is law here. It is sufficient now to determine that it is not applicable to this bequest.
The principles established upon this subject by the English authorities, to which our opinion in this case conforms, are plain and intelligible. It is a general rule, that a condition annexed to a devise or bequest for life, whereby it is to be divested by the marriage of the devisee or legatee, is to be considered as intended merely in terrorem, and it is therefore void. To this rule there is an exception, that such condition shall be effectual, if the subject of the devise or bequest be given over, so as to create an interest in another person. And, again, this * exception [*182] is restrained and limited. To give it effect, the giving over to a third person must be an express giving over of the particular devise or legacy, unincorporated with any other subject; and it must also be immediate, to take effect at the time of the marriage. Neither of these circumstances attends the bequest under consideration. It is not an express bequest of the particular legacy, nor was it to have an immediate effect.

Judgment for the plaintiffs.

Note. The chief justice, being related by affinity to one of the parties, did not sit in the cause. After Sedgwick, J., had delivered the opinion of the Court, he observed that his brother Sewall, who was not then in Court, did not concur in that opinion. (12)

 4 Burr. 2055, Long vs. Dennis.

 4 Burr. 2052 — Com. Rep. 726. — 2 Ves. 293. — Ca. Ch. 22. - -1 Ch. Rep. 121 Skin. 286.

 Styles, 148. — Bac. Abr. Tit. Wills, F.

 1 Wils 138, Wheeler vs. Bingham

 2 Ves. 293.

 Wils., ubi supra.

 1 D.& E. 389.

 [Unqualified restrictions on marriage are clearly void on grounds of public policy. —Perrin & Al. vs. Geddes, 9 East. 170. — 2 Rob. Wills, 335, note 7. — 2 Powell by Jarman, 290, 291. — Ed.]