EMILY SMALL & *als. appts. vs.* MARY SMALL.

Of the effect of a will made *in terrorem.*

If a wife by her virtues, has gained such an ascendancy over her husband, that her pleasure is the law of his conduct; such influence is no reason for impeaching a will made in her favor, even to the exclusion of the residue of his family.    Nor would it be safe to set aside a will on the ground of influence, importunity, or undue advantage taken of the testator by his wife, though it should appear that she possessed a powerful influence over his mind and conduct in the general concerns of life, unless there should be proof that such influence was specially exerted to procure a will peculiarly acceptable to her, and prejudicial to others.

The legal construction of a will is exclusively a subject of common law jurisdiction; and is not cognizable by the Supreme Judicial Court, when sitting as the Supreme Court of Probate.

IN this case, which was an appeal from the decree of the Judge of Probate refusing probate of the will of *Henry Small*, the principal question was whether, under the circumstances proved, the testator intended the instrument as his last will, or only as an expedient, to operate *in terrorem* upon a child who had incurred his displeasure.

Small & als. *v.* Small.

It was argued at this term by *Emery* for the appellants, and *Longfellow* for the appellee. The facts sufficiently appear in the opinion of the court, which was delivered at the following *November* term by

MELLEN C. J. This is an appeal from a decree of the Judge of Probate in this county. A paper, purporting to be the last will and testament of *Henry Small*, was presented for probate. Upon examination of all the facts in relation to the same, the Judge was of opinion, that the testator, at the time of making the supposed will, was not of sound and disposing mind and memory ; and he thereupon decreed against the probate and allowance of the same, as the last will and testament of said *Henry Small*. In the reasons of appeal, the decree is alleged to be against law, because the testator, at the time of making the will, was more than twenty one years old ; was then of sound and disposing mind and memory ; and that the instrument was duly executed, and was his last will and testament. It has not been denied that the testator was of competent age ; and in the argument it has not been contended that he had not the possession of his reason, understanding, and memory ; but the point relied on is, that if the instrument was duly executed as to form, still that it was not intended to be, or executed as the testator's last will ; and, even if it was, that it was made under the unlawful importunity and influence of his wife, who is the principal appellant in the case, and that on that ground, it is void.

1. From the testimony of the subscribing witnesses, there does not seem to be any doubt as to the execution of the will in point of form. One of the witnesses testifies to his making the usual declaration, that the instrument was his last will and testament. The other two do not particularly recollect this ; but the circumstance is not material ; the due subscribing by the testator and witnesses being proved. See 4 *Dane's Abr.* 559, 560, 561, 568, 569, and cases there cited.

2. The next question is, whether the instrument, so executed, was intended to be, and operate, as his last will ; or was only designed as an admonition to his daughter *Mary*, the appellee ;

and an experiment, by way of corrective to her conduct, of which he was habitually complaining ; and was, in fact, a mere measure to have its effect *in terrorem* on the mind of his daughter, but none upon his own property.

On this point the proof is not clear.    If such was his object, it seems no measures were taken to apprize her of what he had done ; and there is proof of *Mary's* declaration, that she did not know of the existence of a will till some time after the testator's death, and more than four years after the will was executed.  One of the subscribing witnesses says that the testator stated that " if his daughter found out that he had cut her off, she would do better." Another of the witnesses says that the testator, at the time the will was written, remarked that if his daughter "reformed, he should do better by her." Both say that at that time he appeared much excited and angry.  And yet, during four years, he does not appear to have changed his determination as to his daughter, and the disposition of his estate, though his excitement and passions must have subsided.  It further appears, from the testimony of one of the witnesses, that the testator requested him to examine the will, and give his opinion respecting it ; and spoke of it as his settled will.  Considering all these circumstances, in connection with the other important fact, that the will does not appear to have been revoked, or cancelled, or in any manner altered, we cannot perceive any legal ground for concluding that the instrument in question, when it was executed, was not intended to be his last will and testament, and as such to be considered and respected.  We must presume that in his view, at least, his daughter had not " reformed," and therefore he was never disposed " do better by her."

3. The next inquiry is, whether the instrument in question is to be disallowed as the last will and testament of *Henry Small*, on account of any unlawful importunity and influence of his wife, by reason of which his mind was embarrassed, and so restrained in its operations that he was not master of his own opinions, in respect to the disposition of his estate.   On this subject no precise and distinct line can be drawn ; but the influence exerted must be an unlawful influence, on account of the manner and motive of its exertion.

If the testator be compelled by violence, or urged by threatenings, to make his testament, the testament being made by just fear, is ineffectual. Likewise if he be circumvented by fraud, the testament loseth its force ; for albeit honest and modest intercession or request is not prohibited, yet these fraudulent and malicious means, whereby men are secretly induced to make their testaments, are no less detestable than open force. 1 *Swinb.* 22. So if by over importunement. As if a man make his will in his sickness, by the over importuning of his wife, to the end he may be quiet; this shall be said to be a will made by constraint, and shall not be a good will. *Style* 427. If a wife, by her virtues, has gained such an ascendancy over her husband, and so rivetted his affections, that her good pleasure is a law to him, such an influence can never be a reason for impeaching a will made in her favor, even to the exclusion of the residue of his family ; nor would it be safe to set aside a will on the ground of influence, importunity, or undue advantage taken of the testator by his wife, though it should be proved she possessed a powerful influence over his mind and conduct in the general concerns of life, unless there should be proof that such influence was specially exerted to procure a will of such a kind as to be peculiarly acceptable to her, and to the prejudice and disappointment of others. The evidence on this point is, that prior to the testator's marriage with the appellant, he was remarkably fond of his daughter *Mary* ; but that afterwards there was not only a coolness, but a great degree of alienation ; his affections were withdrawn from her, and in several instances he treated her with extreme harshness and severity. It appears also that the mother in law said she could not live with her; and that she ought not to share in the estate equally with the rest, as she had been so troublesome. It is also in proof that the husband often said his wife was the best woman in the country ; and that such an angel of a woman could not do wrong ; but no witness has testified as to her having exerted any influence over her husband in the disposal of his estate, though she expressed her opinion to one of the witnesses, as before stated, that *Mary* ought not to have an equal share with the rest of the family. The father also com-

plained that *Mary* had a very ugly temper.   Such is the essence of the testimony, applicable to  this head of  the cause, and  the inference is irresistible that the  testator reposed the greatest confidence in his wife, and entertained the highest opinion of her virtues; and there is strong ground for  believing that  his opinion and treatment of  *Mary*, after his marriage  with the  appellant, were the consequences of her prejudices against *Mary*, and com- plaints and accusations to him respecting her conduct.    Thus far she seems to have possessed, and successfully exerted, a general influence over her  husband ;  and there is no  proof in the  cause that *Mary* did not give occasion for some of the complaints made by  the testator and his wife against her;  or that the wife was not deserving of the affections and confidence of her husband.   But a will must not be set aside in consequence of such a general influ- ence,  obtained in such a manner;  for in  so gaining it, she  could not be liable to censure.    Have we then any evidence, by which we  can be  justified in the conclusion that  she abused the  confi- dence of her husband, and exerted an unlawful influence over his mind and feelings  and passions, upon the subject of his will, so  as to induce  him to give his estate to  her and her children, to  the almost  total exclusion  of his children  by the former  marriage from the benefits of that estate?    We do not find any proof direct to this point, and we do not  feel  at liberty  to decide this cause, or any other, on mere conjecture.  The law requires proof of facts; especially  when the  object is to  destroy and  set aside an  act, apparently deliberate, and executed with all usual and legal for- malities.    For the reasons  above  assigned, we  cannot  sustain either of the  three objections which we have been  considering. The remaining one is of a different character.

The fourth objection is founded on the nature of  the devise  to the wife,  or rather of the condition on which the estate is devised to her, viz.  "that she shall hold it during the time she continues " the widow of the testator, sole and unmarried."   This condition or  restriction it is said is void,  as against the  policy of the law ; and in support of the objection the counsel  has cited the case  of *Parsons v. Winslow* 6 *Mass.* 169.   Hence, it  has been  argued, the will ought not to be allowed.   Without giving any opinion as

to the effect of the above mentioned condition or restriction, either as it may regard the estate devised to the appellant, or the subsequent devise and legacies to the several children, we would answer the argument, by merely observing, that so far as the construction of the will, or any particular clauses in it, may be a subject of judicial inquiry, it is one of purely common law jurisdiction, and not a question examinable by us, sitting as the Supreme Court of Probate. On the contrary, the question whether an instrument, purporting to be a last will and testament, ought to be approved and allowed as such, is one of purely probate jurisdiction, and so not examinable by us, in virtue of our common law jurisdiction. This distinction is well settled and established by our statute, and uniform practice, as well as by the following decisions. *Osgood v. Breed* 12 *Mass.* 525. *Dublin v. Chadbourn* 16 *Mass.* 433. *Laughton v. Atkins* 1 *Pick.* 535, and *Shumway v. Holbrook ib.*114. This objection must share the same fate, and fail as the preceding ; and the consequence is that the decree appealed from, must be reversed, and the will approved, and allowed, and an exemplification of this decree be remitted to the probate court; that such proceedings may there be had touching said will, and in conformity to said decree, as the law requires.

*Decree reversed, and the will approved and allowed.*