*Margin note:*
COPPAGE
vs
ALEXANDER'S
HEIRS.

---

## Coppage *vs* Alexander's Heirs.

ERROR TO THE FAYETTE CIRCUIT.

*Devises.   Condition.   Limitation.   Marriage.*

JUDGE EWING delivered the Opinion of the Court.

ROBERT ALEXANDER made his last will and testament containing the following devise: "I give unto my beloved

*Margin note:*
CHANCERY.

Case 105.

May 4.

The case stated.

COPPAGE
vs
ALEXANDER'S
HEIRS.

wife, Mary Alexander, the half of my land I now own *during her widowhood or life;* also, my negro man, Moses, is to stay with my said wife during her life, and to take care of her, and is to have, at her death, for his services, the one fourth part of the half of my land and be set free; also, to my wife, one bay mare, Pigeon, and one large sorrel horse; two feather beds and furniture; kitchen and cupboard ware; one half dozen chairs; three sows; one boy, David, and one girl, Lindy." He devisedthe half of his said tract of land, which embraced about one hundred acres, and upon which he was living and died, "to his daughter-in-law, Delphia, to be rented out 15 years for her and her childrens benefit," but made no other disposition of the remainder in said tract. After bequeathing to each of his children, six in number, to some one and to others two small slaves, and some other small articles of personal property, he died. His widow, after living on the land devised to her a short time, having her portion allotted to her by commissioners, intermarried with one Rhodem Coppage, and removed from the land, permitting her children to take possession and enjoy the same without claim or complaint on her part.

Matter of Mrs. Coppage's cross bill, and decree of the Circuit Court.

Her last husband, Coppage, died, and to a bill filed by her children, the heirs and legatees of her first husband, Alexander, against her and others, she filed a cross bill, setting up claim against them for rents which had accrued after her second marriage, which the Circuit Court decreed to her, upon the ground that the devise to her, limiting the estate to her widowhood, was a condition in restraint of marriage, and was, therefore, void, there being no devise over. From this decree she has appealed to this Court.

A limitation in a devise to a widow that she shall not marry, is not void, though there may be no bequest over. An annuity during widowhood, is not against the policy of the law.

We are aware that it has been sometimes decided that a condition in the bequest or devise of a husband, in restraint of the second marriage of his widow, is, as in other cases where there is no devise over, to be construed *in terroram,* against the policy of the law and void: *Parsons* vs *Winslow,* (6 *Mass. Rep.* 169;) *Marples* vs *Bainbridge,* (1 *Modern Rep.,* 590.) Yet it has been frequently said, and we incline to think upon good reason, that a condition that a widow shall not marry, is not unlawful or void, or an annuity during widowhood: *Story's*

*Equity*, 283; 1 *Fonblanque's Equity*, 210, *note*; *Richards* vs *Baker et al.* (2 *Atkins*, 320;) *Scott* vs *Taylor* (2 *Bacon's Chy. Rep.* 488;) 1 *Roper on Legacies*, *chap.* 13. So far from its being bad policy to restrict the second marriage of a widow, in many instances, it would seem to be the best of policy and redound most to the public interest. When she has children to raise and educate, it would, in the general, seem most consonant to good policy and sound morals for her to devote herself to their superintendence, care, morral culture and education, than to leave them to their fate, placing herself under the government and control of a second husband. Moreover, the first husband, without intending to impose any undue restraint upon the second marriage of his wife, might feel it proper, and for the best of reasons, to make a more liberal provision for her while she remained a widow and dependent upon her own exertions for support, than after she placed herself under the protection of another husband, and was entitled to his aid and comfort. And by way of accomplishing this beneficent object, may, as in the case now before the Court, make a portion of the estate left to her, cease with her marriage and descend to his children. Besides, the widow in this State, if she is not satisfied with the provision made for her by her husband, or the restrictions imposed upon her or engrafted upon the estate left her, may renounce the provisions made for her by his will, and betake herself to the provision which the law secures to her. The reason, therefore, for construing a condition in restraint of her second marriage void, does not exist with so much force as when a devise, with such condition, is made to another. Instead of the widow, in this case, renouncing the provisions of the will, a paper is exhibited showing that she renounced her legal provision and agreed to *abide* by the will as it was made. Besides, it would seem that the same policy or reason does not exist, against a restriction of a second or third marriage, as against a first, or against the exercise of the right to marry at all. Nor do such marriages, especially when there are children by the first marriage, generally turn out so well for the interest of the parties or the public.

COPPAGE
vs
ALEXANDER'S
HEIRS.

COPPAGE
*vs*
ALEXANDER'S
HEIRS.

A devise to a
widow by her
husband, during
life or widow-
hood, is *a limita-*
*tion* expressive
of the duration of
the estate, and
not a condition
precedent or
subsequent.

But waiving the question just mooted, as to the effect of a *condition clearly expressed*, restricting the marriage of a widow, as unnecessary now to be determined, we are clearly of opinion, looking at the whole contents of the will, that the devise to his wife *during widowhood or life*, was *intended* by the testator, and should be construed, as a *limitation* expressive of the duration of the estate, and not as a *condition* subsequent or prior: 1 *Roper on Legacies, chap.* 13, 558, 526, *et seq.*; *Richards* vs *Baker*, 2 *Atk.* 321. The testator having made a liberal provision for his wife, in slaves and other property, according to his circumstances, and vested the same in her absolutely, he leaves to her in addition, the one half of his little farm as a home in effect, during her life if she remained a widow, or during her widowhood only, in case she married. The happening of either event was intended to terminate the estate. It was intended as a benefit *durante viduitate* and no longer. The estate is not vested for life, to be forfeited if she married, but is vested during her widowhood only, in the event of her marriage, and must cease with the termination of her widowhood, as one of the periods to which it was limited, and upon the accrual of which it was made to expire: *Vance and wife* vs *Campbell's heirs,* (1 *Dana,* 230.) With the marriage of the widow her estate in the land having terminated, she had no further right to the rents or profits. But if this question was doubtful, after surrendering the possession to the heirs, and permitting them to occupy and use the same, without a claim or complaint on her part, it would seem that she ought not afterwards to be permitted to charge them with rents.

The decree of the Circuit Court is reversed and cause remanded, that her cross bill may be dismissed.

*Owsley & Goodloe* for plaintiff; *Robinson & Johnson, and Pindell,* for defendants.