## WALSH vs. MATHEWS & WIFE.

A devise by a husband to his wife "during her natural life, or widowhood" is not in restraint of marriage so as to render the condition invalid. The estate so devised is terminated by the marriage.

ERROR to St. Louis Court of Common Pleas.

GAMBLE & BATES, *for Plaintiff in error.*

LESLIE, *for Defendants.*

MCBRIDE, J., *delivered the opinion of the Court.*

This was an action of ejectment brought by Mathews & wife against James B. Walsh in the St. Louis Court of Common Pleas, for real estate in St. Louis county. The case involved the construction of the will of Joseph W. Walsh, deceased, and was submitted to the court upon a special verdict, which found as follows: "The jurors aforesaid upon their oaths aforesaid find that Joseph W. Walsh, deceased, late of the city of St. Louis, departed this life in the month of September in the year 1842, leaving his widow Elizabeth, who is co-plaintiff in the action, and two daughters, to-wit: Mary F. Walsh and Margaret S. Walsh, who were then and still are under age; the former being now about eight years of age and the latter about six years of age. That said Joseph W. Walsh, previous to his decease, to-wit: on the fifth September, 1842, made his last will and testament, which is in the following words and figures, to-wit: "In the name of God, amen; I, Joseph W. Walsh, of the city and county of St. Louis, and State of Missouri, being sick and weak of body, but of sound and disposing mind, memory and understanding, considering the certainty of death and the uncertainty of the time thereof, to the end that I may be prepared to leave this world when it shall please God to call me hence, do make, publish and declare this to be my last will and testament, hereby revoking and making null and void all other last wills and testaments by me heretofore made, and my will is, that after my decease, all my just debts shall be paid by my executors herein afternamed, and as to the residue of my estate and property with which it has pleased God to bless me, and which shall not be required for the payment of my debts,

funeral charges and expenses in and about the execution of this my last will and the administration of my estate, I give, devise and bequeath to my wife Elizabeth, all my personal property of every kind, except as herein otherwise bequeathed, devised and disposed of. To have and to hold the same to her and her heirs, executors and administrators, to her and their use and behoof forever. Also the use, rents and profits of my brick house on Poplar street, between second and third streets in the city of St. Louis aforesaid, and the use, rents and profits of my farm called "Belair," in the common fields of Carondelet, in the county of St. Louis aforesaid, being the same farm or tract of land purchased by me from one Lewis Constant, bounded, &c., to have and to hold the said house and farm with the rights, privileges and appurtenances, for and during her natural life or widowhood. I will and direct that my executors hereinafter named, cause the houses, buildings, fences, and other improvements now in progress on my said farm to be fully completed and finished according to the plans, estimates and contracts which I have formed and made for the same, and that they defray the expenses of the said buildings, fences and improvements out of any moneys which may come into their hands as my executors, which may not be necessary to pay my just and equitable debts; and that if such funds be not sufficient to defray the said expenses, my said executors may sell or otherwise dispose of so much and such portions of my real estate as they may deem proper to complete the said improvements. All the real or mixed estate of which I shall be seized and possessed, or to which I shall be entitled at the time of my decease, except as herein otherwise provided, I give, devise and bequeath, to be equally divided to and between my daughters, Mary and Margaret, and to their heirs in fee simple forever, provided however, that in case both of my said daughters shall die without issue and without having disposed of the said real estate during their life time, then the said estate shall pass to and vest in my own blood relations, as if I had died unmarried and intestate." (After giving some directions in reference to the adjustment of a claim, which the testator had in the Sac and Fox reservation, lying between the Des Moines and Mississippi rivers, the will proceeds,) "I give and bequeath to my dearly beloved Mother, Margaret Walsh, not on account of their intrensic value but as tokens of my love and gratitude for her and as remembrances of me, my two old colored landscape paintings in my front parlor. I give and bequeath to my brother James, as a token of love, my gold watch and chain, and I desire that my said brother James be appointed guardian of my daughters Mary and Margaret, and that no security be required of him as such

*Walsh* vs. *Mathews and wife.*

guardian. Lastly, I do nominate and appoint my brother Peter A. Walsh and James B. Walsh, to be the executors of this my last will and testament, and I will and desire that no security be required of them except a nominal one of, say one hundred dollars. Signed, &c." That after decease of said testator and probate of said will as aforesaid, the said Elizabeth Walsh, his widow, took possession of the brick house on Poplar street in the city of St. Louis, and of the farm, both named and described in said will, and thenceforward received the rents and profits of the same, and used and enjoyed the same by virtue of and under the devise to her thereof made in said will. That on January 28, 1845, after the death of said testator, said Elizabeth intermarried with the plaintiff, William Mathews; that immediately after her said marriage with said William Mathews, the said Elizabeth being informed that by the terms of said devise, her said marriage divested her of all estate, right or title, as tenant for life or otherwise, in and to said house on Poplar street, and said farm called "Belair," described in said will; was induced to give up and surrender, and did give up and surrender to Peter A. Walsh the possession of said house and farm, and that from the date of said surrender by said Elizabeth, said premises have been in the possession of said Peter A. Walsh, or his tenants, and that the rents and profits thereof have not since the date aforesaid been paid to or received by said Elizabeth or on her account or by her order, and that at the time of the commencement of this suit, the said defendant was in possession of said farm, and that the monthly value of said farm is twenty dollars, and that said testator, Joseph W. Walsh, at the date of his said will, and at the time of his decease, was seized in fee of said house on Poplar street and of said farm described in his said will. But whether or not upon the whole matter aforesaid by the jurors aforesaid in form aforesaid found, the said defendant is guilty of the tresspass and ejectment within specified, the jurors aforesaid are altogether ignorant, and thereupon pray the advice of the court aforesaid; and if upon the whole matter aforesaid, it shall seem to the said court, that the said defendant is guilty of the tresspass and ejectment aforesaid, then the jurors aforesaid, upon their oaths aforesaid, say that the said defendant is guilty thereof in manner and form as the said plaintiffs have within thereof complained against him, and in that case they assess the damages of the said plaintiffs on occasion of the tresspass and ejectment aforesaid, besides their costs and charges by them about their suit in that behalf expended to $160; but if upon the whole matter aforesaid, it shall seem to the court that the said defendant is not guilty of the tresspass and ejectment aforesaid, upon their oaths aforesaid, say

that the said defendant is not guilty thereof in manner and form as he hath within in pleading alleged."

On the foregoing facts the court declared the law to be for the plaintiff and entered judgment against said defendant. The case is brought to this Court by writ of error.

It will be found by reference to the will, that the testator gave to his wife nearly the whole of his personal estate, and likewise devised to her a brick house in the city of St. Louis and a farm in the country, with the words, "to have and to hold the said house and farm, with the rights, privileges and appurtenances, *for and during her natural life or widowhood.*

We are called upon to decide what estate the widow is entitled to under the foregoing clause.

It will be made manifest by an examination of the several clauses in the will, that the testator understood the force and effect of the terms used by him. He devised and bequeathed to his wife all his personal property of every kind, except as therein otherwise bequeathed, devised and disposed of, "to have and to hold the same to her and her heirs, executors and administrators, to her and their use and behoof forever." Then follows the bequest to his wife of the house and farm to have and to hold the same "for and during her natural life or widowhood." Filling the elipsis, the sentence would read, "to have and to hold the said house and farm with the rights, &c., for and during her natural life, or to have and to hold the said house and farm with the rights, &c., for and during her widowhood."

Here then is a limitation on a limitation. The first clause of the sentence limits the estate to the natural life of the wife. The latter clause imposes a limitation on the former and determines the estate upon the happening of a contingency which the testator foresaw might take place, to-wit: the remarriage of his wife. If she did not remarry, then she was to enjoy a life estate; if she did, her remarriage determined her estate in the house and farm. During her widowhood she takes and holds under the first clause, the second being in-operative; but upon her second marriage, force and effect is imparted to the latter clause and her estate is determined thereby. That the testator intended thus to dispose of his house and farm, cannot we think admit of a reasonable doubt.

If the provisions of the will operate harshly or unjustly upon the widow's rights, her remedy is pointed out by the 10th sec. of the act concerning dower, R. C., 1835, page 229, which provides that she may at any time within one year after the will is proved and recorded, file her declaration

in writing that she will not accept the provisions made for her by said will.

But it is insisted, that notwithstanding the testator has, by his will annexed this limitation to the estate, yet she is still entitled to a life estate, inasmuch as the limitation is in restraint of marriage and so against public policy.

It must be admitted that there is no little conflict of opinion on this question. Much learning and subility of reasoning have been called into requisition to sustain the contradictory adjudications on the subject; after an examination of the whole subject, as far as we have been able to investigate it, we have arrived at the conclusion suggested by Powell in his treatise on devises, 2 vol., 282: "That the numerous and refined distinctions which the cases on this subject present, however, do not apply to devises of or pecuniary charges upon land, being confined exclusively to personal legacies; and with regard to the latter, they owe their introduction to the ecclesiastical courts, who, in the exercise of their jurisdiction over personal legacies, it is well known, borrowed many of their rules from the civil law, to which indeed may be traced the origin of most of the distinctions, which at this day exist between legacies and devises."

He proceeds further to remark, that "by the civil law all conditions restraining marriage, whether precedent or subsequent, whether there were any gifts over or not, and however qualified, were absolutely void; and marriage simply was a sufficient compliance with a condition requiring marriage with consent, or with a particular individual, or under any other restrictive circumstances."

He states, however, that the English courts "have not adopted this rule in its unqualified extent, but have subjected it to various modifications. By the law of England, an injunction to ask consent is lawful, as not restraining marriage generally. A condition that a widow shall not marry is *not* unlawful. An annuity during widowhood, a condition to marry or not to marry T, is good."

In support of the text, he refers to a case decided and reported in 2 Amblers R., 209, and which is stated as follows: "Barret Bowen, by will, 27th October, 1727, devised his land to his wife during her widowhood; and if it shall happen that my wife shall marry again, then my daughter Mary shall enter, provided, if my wife marry and survive my daughter, the estate shall return to her. *Lord Hardwicke* took a distinction; when an estate is given during widowhood, with remainder over, in that case she takes an estate for life determinable on her marrying; and the remainder over takes effect on determination of her estate either by death

or marriage. In the present case it is given during widowhood, with remainder over on her marrying again within a limited time, that is, in the life time of his daughter, and is by way of forfeiture."

The next case referred to by the author is to be found in 2 Vern., 308, and is stated as follows: "Baxter, by his will devised the surplus of his estate (his debts and legacies being paid) to the plaintiff, his wife, and *John*, his eldest son, equally to be divided between them; and then adds, whom I make my executors; and further wills, that she should continue his true widow but if she marry again, *my will is, she shall render the right of being my executrix to my son Roger, to be partner with his brother John in the executorship.*"

The widow having married to one Stone, the question was whether by that marriage she had forfeited her share of the surplus. The Master of the Rolls was of opinion that she had as well lost her share of the surplus, as her right to the executorship.

The text and the cases refered to in support thereof, are in conflict with the principle laid down in the case referred to by the defendant's counsel, and which is reported in 6 Mass. R., 169. This is a leading American case on the subject, and the opinion of the court is drawn up with much labor and ability, and we are free to admit the force of some of the arguments used to support the hypothesis in the case; but conceding this, still, when we consider that in this country the mantle of the law is thrown around a widow, and that the husband could not if he would divest her of her legal portion of his estate, as a means of future support; and when, as in the case now before us, it is seen that the husband has devised to his wife absolutely, nearly the whole of his personalty, which we doubt not was of considerable value; and when we further consider that the construction of the will as contended for by the defendants counsel, would greatly impair the husbands right of disposing of that part of his estate not inhibited by law, we feel constrained to repudiate the principle of that case. Besides, if the principle should be established, that a testator cannot devise to his wife any part of his estate to hold during her widowhood, it would instead of being beneficial to the widow, operate an injury; for the testator not being permitted to annex such a limitation, would be driven to the alternative of withholding from her the enjoyment of all his estate, except that portion which he should see fit to give her absolutely. There is no necessity to hold either void. Independently they are each good, and together they *may* stand without conflict; when a conflict does arise, the last limitation must prevail and control the rights of the widow.

We doubt exceedingly the correctness of the assumption, that restraints upon second marriages are against public policy, and should therefore be adjudged void. Where there is a family of small children, left by the father, to the care and guardianship of a widowed mother, the peace and happiness of the domestic circle would indicate a different policy.

In the case of *Vance & wife vs. Campbell's heirs,* 1 Dana R., 229, where a testator devised all his estate to his wife, during widowhood, with power, as long as she remained his widow, to sell the real estate, and retain one third of the proceeds, with one third of the personalty for life; the whole to go to the children upon the termination of her estate. She made no renunciation of the provision made for her by the will, within the time allowed by law, and married without having sold the estate; *held,* that she was not entitled to dower, and that all her rights under the will were terminated by the marriage. The court say, that "the devise to the wife during her widowhood should not be construed as a *condition* in *restraint of marriage;* but should be deemed only an allowable *limitation* to the estate devised. The marriage *ipso facto* terminated the devisee's right to any portion of the estate as devised from the will."

In a case reported in 2 B. Mon., 313, it was held, that a limitation in a devise to a widow that she shall not marry, is not void, though there may be no bequest over. An annuity during widowhood is not against the policy of the law. A devise to a widow by her husband, during life or widowhood, is a limitation expressive of the duration of the estate and not a condition precedent or subsequent.

In delivering the opinon of the court the Judge remarks: "We are aware that it has been sometimes decided that a condition in the bequest or devise of a husband, in restraint of the second marriage of his widow, is, as in other cases where there is no devise over, to be construed *in terrorem,* against the policy of the law and void; 6 Mass. R., 169; 1 Mod. R., 590. Yet it has been frequently said, and we incline to think upon good reason, that a condition that a widow shall not marry is not unlawful or void, or an annuity during widowhood. *Story's E.,* 283; 1 *Fonb. E.,* 210 *note;* 2 *Atk.,* 320; 2 *Bro. Ch. R.,* 488; 1 *Roper on Legacies, chap*· 13. So far from its being bad policy to restrict the second marriage of a widow, in many instances it would seem to be the best of policy and redound most to the public interest. Where she has children to raise and educate, it would in the general seem more consonant to good policy and sound morals for her to devote herself to their superintendence, care, moral culture, and education, than to leave them to their fate, placing herself under the government and control of a second husband. Without

intending to impose any undue restraint upon the second marriage of his wife, a husband might feel it proper, and for the best of reasons, to make a more liberal provision for her while she remained a widow and dependent upon her own exertions for support, than after she placed herself under the protection of another husband, and was entitled to his aid and comfort; and by way of accomplishing this benificent object, may as in the case now before the court, make a portion of the estate left to her, cease with her marriage and descend to his children."

It is said, 2 Cruise's Digest, p. 26, "A condition restraining a widow from a second marriage generally, is good."

In *Tucker's* notes, book 2, p. 93; where he is discussing *conditions against law*, he uses the following language: "Of the several kinds of conditions against law above mentioned, that which respects restraints upon the freedom of marriage has been most fruitful of discussion.  Conditions in restraint of marriage are considered as odious, and are in construction held to the utmost rigor and strictness.  Moreover, if the restraint be total, amounting to an entire prohibition, it seems agreed on all hands that it is void except in the case of a widow, who may be restrained by condition annexed to a devise in her husbands will from marriage generally on pain of forfeiting his bounty."  2 *Strange,* 1128.

Thus fortifited by reason and adjudications, we have no hesitancy in deciding that the Court of Common Pleas erred in deciding the law in favor of the appellees, and its judgment should therefore be reversed, and the other Judges concurring, the same is reversed.