## WILLIAMS & WILLIAMS vs. COWDEN.

A, by his will devised to his son B, and to his daughter C, in equal moities a tract of. land, with the provision that "if his said daughter should marry or die," the land should belong exclusively to his said son. Held, that the above condition attached to the estate of the daughter, is in restraint of marriage, and is void.

WILLIAMS & WILLIAMS vs. COWDEN.

ERROR TO BOONE CIRCUIT COURT.

GORDON for plaintiffs in error.

The plaintiff in error insists that the court below, improperly sustained the demurrer to the petition for the following reasons.

1. By the will of Joseph Cowden, his daughter, Louisa, acquired at his death an absolute title in fee simple to one half of the tract of land mentioned in the petition, of which she was not divested by her subsequent marriage. The condition in the will, that "if she married, the land should belong to his son, Montgomery Cowden," was in general restraint of marriage, and therefore illegal and void. 10 East. R. 22; 1 Story's Equity, pages 271, 273, 279, 280, 281, 282, 283 and 284; Foubl. Equity B. 1 Ch. 4, sec. 10 and note thereto; 3 Vesey Rep, side paging 96; Story on Contracts, page 124, sec. 195, 196.

2. The devise to Louisa Cowden passed to her at the death of the testator, a perfect title in fee simple to one half of the land which was not divested by her subsequent marriage, although the land was given over to Montgomery Cowden by the will, because the condition annexed to the devise was a condition subsequent and annexed to a devise of real estate, and in general restraint of marriage, and therefore against the policy of the law and void. 2 Powell on Devise, side page 291; 1 Story's Equity pages 285, 286; Story on Contracts, page 125, section 197. Co. Litt. 206, note K. As to conditions see Cok. Litt. 201 note A.

ROBARDS for defendant in error.

1. The devise in the will to Louisa, the daughter of the testator is good in law, there being in express devise of the same property over to appellee upon her marriage. 3 Vesey Chan. Rep. 95; 3 Atk. 367; Willes Rep. 93-4-6; Mass. Rep. 178-9; 11 Mo. Rep. 131; 1 Dana 230; 2 Ben. Monroe 314; Williams on Ex. 913; 1 Brown C. Rep. 273; 19 Vesey 13; 1 Atk. 378, 380, and note 1; 2 Atk. 590; 1 Story's Equity 286-7.

2. The divise to Mrs. Williams does not vest a title in her to the land which is to be forfeited by her marriage; but is a limitation of the estate expressive of its duration. By the terms of the will, Montgomery Cowden, upon the death of his father, takes a vested interest in the land subject to a partial enjoyment of it by Louisa, his sister, during her life, or until she should marry.

3. The rule of law contended for, "that a devise in restraint of marriage is void," is a mere rule of construction not applicable in our courts. 3 Ves. 96; Willes 93.

4. The evident intention of the testator in this will is, to give to his son Montgomery, in the event of his marriage, the absolute estate in the land. His marriage is admitted. This is a good devise. He acquired a vested interest in the land upon the death of his father, to be enjoyed after the determination of a particular estate carved out of it. This limitation being good, cannot be made void by a construction of the will manifestly contrary to the express intention of the testator. It would be making a will for him, and not interpreting his own will.

5. In England the rule never was considered as applicable to devises of real estate and should be so decided here. 1 Atk. Rep. 380 and note 1; 2 do 590.

Judge BIRCH delivered the opinion of the court.

The plaintiffs in error brought their suit in the Boone circuit court, against the defendant, for partition of a tract of land. The petition alleged that in the month of August, 1845, Joseph Cowden died seized

of the tract in fee, and that prior to his death he made and published his will, whereby, amongst other things, he gave and begueathed to his son Montgomery, and his daughter Louisa, in equal moities, the tract of land in suit, with provision, however, that if his said daughter should marry or die, the land should belong to his said son exclusively. It is further alleged in the petition, that at the commencement of this suit, the said Montgomery was living and married, and that on the 26th day of January, 1847, the plaintiffs intermarried with each other. The petition concludes with the allegation that the said Montgomery and the said Louisa are each entitled to the equal undivided half of the land, and prays for judgment of partition or sale accordingly. The circuit court having sustained the defendant's demurrer to the petition, the plaintiff presents the legal questions involved in that decision, for the examination and decision of this court.

The question being a new one in the jurisprudence of our State, and the authorities to which we have been referred apparently irreconcileable, we have bestowed upon it such analysis and reflection as has resulted in the conclusion, that upon all just principles of reason and analogy, the legal effect of the will in question, so far as it can be inferred from the pleadings before us, was to vest the real estate therein specified, at the death of the testator, in his two children, as tenants in common; and that the condition subsequent, respecting the marriage of his daughter, was not such an one as the law will divest such an estate. Viewing the case thus, neither the distinction which seems to be somewhat relied on, where there is and where there is *not* a "bequest over," nor the one even less applicable in this country, as between bequests of real and personal estate, need be further examined or remarked upon here, than to state in reference to the former, that in the absence of the will itself, (there being as yet neither answer nor testimony,) we must needs regard the alleged provision as within the *general* rule instead of such exception as may or may not be established upon the full hearing for which we shall remand the cause.

Upon the general proposition, the preservation of domestic happiness, the security of private virtue, and the rearing of families in habits of sound morality and filial obedience and reverence, are deemed to be objects too important to *society*, to be weighed in the scale against individual or personal *will*. In this case, it need scarcely be more specifically intimated, that the clause in question, however well intended, virtually presented and held up a continued reward for that species of immorality *to avert which the institution of marriage was so divinely ordained*

*and has been so wisely upheld.* By its terms, no offence but that of *marriage,* however suitable ; no *crime* even, could divest his child of the estate bequeathed her; Surely society has not been organized thus to uphold a direction to *property,* which is not its *creature,* and which could not even be acquired or transmitted without its aid and protection, but which it must be obvious might thereby undermine and overthrow the main foundation upon which it reposes. It is admitted that this may be regarded, in one sense, as an isolated case, but to this it must be answered, that courts can pass upon it only as parcel of a system in contravention with the one out of which has grown the right to pass upon it at all.

Judge Story, in his admirable commentaries upon equity jurisprudence, after remarking upon the cases which even he cannot reconcile, states the general result of the modern English doctrine in these words: "Conditions, annexed to gifts, legacies and devises, in restraint of marriage, are not void, if they are reasonable in themselves, and do not directly or virtually operate as an undue restraint upon the freedom of marriage. If the condition is in restraint of marriage generally, then, indeed, as a condition against public policy and the due economy and morality of domestic, life, it will be held utterly void."

Mr. Fonblanque has also with great propriety remarked, that "the only restrictions which the law of England imposes, are such as are dictated by the soundest policy, and approved by the purest morality. That a parent, professing to be affectionate, shall not be unjust ; that, professing to assert his *own* claim, he shall not disappoint or control the claims of *nature,* nor obstruct the interests of the community ; that what purports to be an act of generosity, shall not be allowed to operate as a temptation to do that which militates against nature, morality or sound policy or to restrain from doing that which would serve and promote the essential interests of society—These are rules which cannot reasonably be reprobated, as harsh infringements of private liberty, or even reproached as unnecessary restraints on its free exercise."

Godolphin, likewise, has very correctly laid down the general principle, that "all conditions against the liberty of marriage are unlawful" —so that the marvel would seem to be that courts should have so differed in the application of such obvious principles, as to leave perhaps the preponderance of *that* description of authority in favor of the opinion which we have thus reversed.