Stilwell *et ux. v.* Knapper.

------

## STILWELL ET UX. *v.* KNAPPER.

WILL.—*Life-Estate.—Devise During Life or Widowhood .— Condition in Restraint of Marriage.— Words of Limitation, Conditional Limitation and Condition.—Heir.—Rule in Shelley's Case.*—The last will of a deceased husband provided as follows, viz.: "I give and bequeath to my wife, M. S , all my real and personal property, moneys and effects, * * * to be hers during her natural life *or widowhood;* after her death *or marriage,* and after my youngest child then living shall arrive at the age of twenty-one years, to be divided between my children, M. F., J. N.,V. L., M.E. and C. D., to have and share alike," etc. The widow having remarried, one of said

Stilwell *et ux. v.* Knapper.

children brought suit against her husband, who was in possession, for rents and profits, alleging the foregoing facts in the complaint.

*Held,* on demurrer, that the children took as heirs, by descent, and not as devisees, by purchase, the devise to them being void; and that, therefore, the plaintiff sues simply as an heir.

*Held,* also, that the rule in Shelley's case does not apply in this.

*Held,* also, that the words "or widowhood" are words, not of limitation or conditional limitation, but of "condition in restraint of marriage," within the meaning of section 2, 2 R. S. 1876, p. 571; that such condition is void; that M. S. takes a life-estate; and that, therefore, the complaint is insufficient.

From the Fountain Circuit Court.

*H. H. Dochterman* and *M. Milford,* for appellants.

*W. A. Tipton* and *S. F. Wood,* for appellee.

WORDEN, J.—Carrie F. Steely brought this action below, against Henry F. Knapper, and, failing to recover, appealed to this court. Since the appeal Thomas L. Stilwell has intermarried with the original appellant, and has joined in the appeal. Code, sec. 554.

The complaint consisted of two paragraphs, but the second was withdrawn, and a demurrer for want of sufficient facts, to the first, was sustained. The plaintiff declining to answer, final judgment was rendered for the defendant.

The first paragraph of the complaint alleged that the plaintiff, Carrie D. Steely, was an infant of the age of nineteen years, who prosecuted her suit by her next friend, Thomas L. Stilwell; that on the 19th day of November, 1864, John Steely, the father of the plaintiff, died testate in Fountain county, Indiana, leaving surviving him his wife, Mary Steely, and his children by her, viz., Mortimer F. Steely, John N. Steely, Viola L. Steely, Margaret E. Steely, and the plaintiff, Carrie D. Steely, as his only heirs; that John D. Steely died seized in fee of certain lands in Fountain county, Indiana, which are described, containing $479\frac{25}{100}$ acres; that he also died seized of other real prop-

erty in that county, and personal property of the value of ten thousand dollars; that John Steely made and published his last will, a copy of which is set out in full in the paragraph. The following are the portions of the will on which the question here involved depends:

" I give and bequeath to my wife, Mary Steely, all my real and personal property, moneys and effects, that I may possess at the time of my decease, except so much as shall be necessary to defray my funeral expenses and pay my just debts, to be hers during her natural life or widowhood; after her death or marriage, and after my youngest child that may then be living shall arrive at the age of twenty-one years, to be equally divided between my children Mortimer F., John N., Viola L., Margaret E. and Carrie D. Steely, to have and share alike. Nothing above said is intended to take from my said wife, Mary Steely, the right to hold in her own name all right, title, interest and appurtenances to the following real estate which descended to her from her parents, to wit:" (Here certain lands are described other than those described in the complaint as lands of which the testator died seized.) "She is not, in case she sells said described lands, to use the proceeds in any other way than to invest it in other real estate for the benefit and use of the above named five children, to be theirs after death."

Mary Steely was by this will nominated as executrix.

The paragraph proceeds to allege that the will was duly admitted to probate; that Mary Steely qualified and gave bond as such executrix, and settled up the estate; that she, as such widow of John Steely, accepted the provisions made for her by the terms of said will of John Steely, instead of her rights in the real and personal property of said John Steely under the law, including her absolute claim, and accepted the benefit made by said will, and has enjoyed the same as fully as she could; that on the 20th

day of September, 1866, said Mary Steely was married to the said defendant Henry F. Knapper.

The paragraph further alleges that the plaintiff, by virtue of the will, and the acceptance of its provisions by Mary Steely, and the intermarriage of the latter with the defendant, Henry F. Knapper, " became the owner in fee of the undivided one-fifth of the land herein first described, of which said John Steely died seized, and was, at the date of said marriage and ever afterward, entitled to the possession of such undivided one-fifth of said lands and the rents and profits of the same from such marriage until this date."

The paragraph proceeds further to allege that the lands have never been parted between the devisees; that on the 20th day of September, 1866, the defendant, Knapper, took possession of the lands, and has ever since had and enjoyed the rents and profits thereof, and seeks to recover the plaintiff's share of the rents and profits.

The paragraph sets out the matters much more in detail, but the above statement will be sufficient to develop the point upon which the case must be decided.

If the will of the testator, in legal effect, gave to Mary Steely a life-estate in the property devised absolutely, and not dependent upon her remaining a widow, then it follows that neither the plaintiff, nor any of the other children of the testator, will have any right to the lands, or the rents and profits thereof, until the termination of the life-estate; and the demurrer to the paragraph of complaint was correctly sustained. We proceed, therefore, to enquire what estate Mary Steely took under the will?

It is due to counsel to remark that we have been favored with able and exhaustive briefs, that have facilitated our researches and saved us much labor in the examination of the question involved.

The question involves the legal effect of the words in the will, " to be hers during her natural life or widowhood," taken in connection with the other portions of the will. If the words quoted, construed with the residue of the will, import that Mary Steely is to have a life-estate in the property devised, *on condition* that she remain a widow during that time, the life-estate will be absolute, and the condition will fall, inasmuch as we have a statute which provides that "A devise or bequest to a wife with a condition in restraint of marriage shall stand, but the condition shall be void." 2 R. S. 1876, p. 571.

The following summary of the law, on the subject of conditions in wills in restraint of marriage, is found in 1 Story Eq., 11th ed, sec. 280.

" The general result of the modern English doctrine on this subject (for it will not be found easy to reconcile all the cases) may be stated in the following summary manner. Conditions annexed to gifts, legacies, and devises, in restraint of marriage, are not void, if they are reasonable in themselves, and do not directly or virtually operate as an undue restraint upon the freedom of marriage. If the condition is in restraint of marriage generally, then, indeed, as a condition against public policy, and the due economy and morality of domestic life, it will be held utterly void. And so, if the condition is not in restraint of marriage generally, but still the prohibition is of so rigid a nature, or so tied up to peculiar circumstances, that the party, upon whom it is to operate, is unreasonably restrained in the choice of marriage, it will fall under the like consideration. Thus, where a legacy was given to a daughter, on condition that she should not marry without consent, or should not marry a man who was not seized of an estate in fee-simple of a clear yearly value of £500, it was held to be a void condition, as leading to a probable prohibition of marriage. [And in a later case it was held

that a general condition in restraint of marriage is good as to the testator's widow, but not good in respect to any other person.]"

The " later case," above alluded to, is probably that of *Lloyd* v. *Lloyd,* 2 Sim. N. S. 255, where it was held by the VICE-CHANCELLOR, that, "according to the authorities, such a condition is not void as to the wife, the law recognizing in a husband such an interest in his wife's widowhood as to make it lawful for him to restrain her from making a second marriage, by imposing a condition that on such marriage any provision he may have made for her shall cease. And with regard either to his wife or to any other woman, a testator may make a gift so long as she shall remain single ; but if he first gives a life-estate to a single woman, a stranger to him, and then annexes a condition that in case she marries at all, it shall go over, that being in general restraint of marriage, is not a good condition." See *Morley* v. *Rennoldson,* 2 Hare, 571.

We deem it unnecessary to determine whether our statute has done any thing more than to place the widow of the testator upon a common level with other persons, in respect to restraints upon marriage ; in other words, whether such reasonable restraints as would be upheld in regard to other persons may not be upheld in regard to such widows, under the statute above quoted. The statute may be construed to prohibit all restraints whatever upon marriage, or only such general restraint as could not be imposed upon others.

If the will in this case shall be regarded as containing a condition in restraint of marriage at all, the condition is general, interdicting marriage altogether, and must fall. It is apparent that the case turns upon the question whether the words " or widowhood," as used in the will, in the sentence " to be hers during her natural life or

widowhood," taken in connection with the other parts of
the will, are to be regarded as importing a condition, or
only a limitation. If they are words of condition, the
condition is void. If they are words of limitation only,
the estate of Mary Steely terminated at her marriage.

In the solution of the question involved, sight must
not be lost of the devise over to the children of the testa-
tor after the death or marriage of his widow ; for there
may be cases, where there is a devise over, in which words
that would otherwise be regarded as words of condition,
will be regarded as words of conditional limitation.

Thus it is said : " If the condition subsequent be fol-
lowed by a limitation over to a third person, in case the
condition be not fulfilled, or there be a breach of it, that
is termed a conditional limitation." 4 Kent Com. 126.

. Blackstone says : " Yet, though strict words of condition
be used in the creation of the estate if on breach of the
condition the estate be limited over to a third person, and
does not immediately revert to the grantor or his repre-
sentative (as if an estate be granted by A to B, on con-
dition that within two years B intermarry with C, and
on failure thereof then to D and his heirs), this the
law construes to be a limitation and not a condition :
because if it were a condition, then, upon the breach
thereof, only A or his representatives could avoid the estate
by entry, and so D's remainder might be defeated by their
neglecting to enter ; but, when it is a limitation, the estate
of B determines, and that of D commences, and he may
enter on the lands the instant that the failure happens."
2 Bl. Com. 155.

In Preston on Estates, pp. 49, 50, it is said : " It is the
well-known property of a condition, to defeat the estate
before the completion of the period to which the estate
may continue under the limitation. * * * It may also be
noticed, that where a particular estate is created by will,

and a qualification in the nature of a condition is annexed to the disposition of that estate, and another estate is limited by the same will, after the estate to which the condition is annexed, the condition is not distinct from the limitation; it forms part of the limitation, and circumscribes the continuance and extent of that estate to which the qualification is annexed." See, also, 1 Fearne Remainders, 271.

The doctrine above stated can have no application to the present case, however, unless there was a valid devise over of the remainder, or some part of it, after the termination of the estate devised to Mary Steely. Indeed, the doctrine is expressly limited to cases of a conditional devise over. If there was no devise over, the reason of the doctrine, as stated by Blackstone, utterly fails; for there is no one to be kept out of an estate by the failure of the heirs of the testator to enter for condition broken. And, it may be added, if there was no devise over, there is no one to complain that the commencement of the estate devised to him is postponed, contrary to the intention of the testator. If there was no devise over, there is no reason for converting what would otherwise be a condition into a conditional limitation. Viewing the plaintiff as an heir of the testator, and not as a devisee, there is no reason for construing the words "or widowhood," as used in the will, as a conditional limitation, if they import a condition rather.

We are led, therefore, to inquire whether there was any valid devise over to the children of the testator.

It seems to us that by the terms of the will they took just the estate which the law would have cast upon them by descent, had they not been mentioned in the will at all. If that is the case, the devise to them is a nullity, and they must be deemed to have taken by descent and not by purchase. If the will had stopped after having devised the property to Mary Steely " to be hers during her natural

life or widowhood," and had not disposed of the remainder at all, the children of the testator would have inherited the reversion equally; and this is what the will attempts to devise to them.

They, therefore, as before stated, take by inheritance, the devise to them being void. It is said by CHANCELLOR KENT, 4 Kent Com. 506, that "A devise to the heir at law is void, if it gives precisely the same estate that the heir would take by descent if the particular devise to him was omitted out of the will. The title by descent has, in that case, precedence to the title by devise. The test of the rule, says Mr. Crosley, is to strike out of the will the particular devise to the heir, and then, if without that he would take by descent exactly the same estate which the devise purports to give him, he is in by descent and not by purchase. Even if the lands be devised to the heir charged with debts, he still takes by descent; for the charge does not operate as an alteration of the estate."

In the case of *Ellis* v. *Paye*, 7 Cush. 161, it is said, among other things: "It makes no difference as to the operation of this rule, that the land comes to the heir charged with payment of annuities or legacies, nor that the testator devises the land to one for life, remainder to his heir at law in fee, in which latter case the heir is in, on the termination of the life-estate, by descent and not by purchase."

If the children of the testator be regarded as having taken under the will, the remainder became vested in them immediately upon the death of the testator, though not to be enjoyed in possession until the termination of the estate devised to Mary Steely, just as the reversion would vest in them by descent; so that, in this respect, they took the same estate by descent as by the will. And the direction in the will, that the land should not be divided between the children until the youngest one should

become of age, did not change the tenure of the property. Indeed, it is said in a note to the case of *Scott* v. *Scott*, 1 Eden, 458, referring to authorities, that " a mere alteration as to the time of the heir's coming to the estate does not create such a difference in point of estate as to prevent him from taking by descent."

If a testator should provide in his will, that his lands should not be parted among his children until the youngest should become of age, this, doubtless, would be effectual to prevent partition until that time should arise. 2 R. S. 1876, p. 347, sec. 10. Yet it is clear that such a provision would not make the children purchasers rather than heirs. They would take the lands as heirs and not as devisees.

But it is insisted by counsel for the appellant, as we understand their brief, that the devisees must be regarded as taking by purchase and not by descent, because they are named in the will, and mentioned as " children " and not as heirs ; and the rule in Shelley's case is cited as illustrative of the point.

It may be conceded that under the rule in Shelley's case, if there be a devise to A. for life, with remainder over in fee to his heirs, or the heirs of his body, the fee vests in A. and the heirs take by descent and not by purchase. But if there be a devise to A. for life, with remainder over in fee to his " children," the children take by purchase, and not by descent. *Sorden* v. *Gatewood*, 1 Ind. 107 ; *Doe* v. *Jackman*, 5 Ind. 283 ; *Siceloff* v. *Redman's Adm'r*, 26 Ind. 251 ; *McCray* v. *Lipp*, 35 Ind. 116 ; *Andrews* v. *Spurlin*, 35 Ind. 262 ; *Nelson* v. *Davis*, 35 Ind. 474.

But we do not see that the rule in Shelley's case has any application to, or throws any light upon, the question here involved. The rule in Shelley's case, where it arises upon a will, raises no question whether there is a valid devise over after the termination of the life-estate, but always

goes on the theory that there is a valid devise over. Otherwise, the devisee for life could not take the fee, as he does where the property is devised to him for life with remainder in fee to his heirs. Again, under the rule in Shelley's case, the heirs of the devisee for life *take by virtue of the will*, though they take as heirs of the life-tenant, for without the will they would take nothing.

The difference between a devise to A. for life, with remainder in fee to his children, and a devise to A. for life, with remainder in fee to the children of the testator, is an important one. In the former case the children of A. might take by purchase, but they would take nothing without the will. In the latter case the children of the testator might take the reversion without any devise of it to them.

Here the heirs of the testator *take by descent from him*, and not from one to whom the life-estate is devised, with remainder over to them; and they take without the aid of any will. And we see no reason for holding that, because the heirs of the testator are described in the will as " children " instead of heirs, they should be held to take by devise rather than by descent.

The real question is, whether they take by descent the same estate that was attempted to be conferred upon them by devise, whether they are called children, or heirs, or however else they may be designated in the will. And this is sustained by authority. In the case of *Hurst* v. *The Earl of Winchelsea*, 1 W. Bl. 187, a case referred to by Chancellor KENT on the subject, a woman devised all her estate, charged with pecuniary legacies, to her son Thomas Herbert, designating him by name, and not as heir; and it was held, after two arguments, that he took as heir, and that the devise gave him no estate at all.

In the case of *Medley* v. *Williams*, 7 Gill & J. 61, the testator, after making some other dispositions in his will,

" gives and bequeaths, all the rest, and residue of his estate, both real and personal, to his daughter M. J. Williams, to her, and her heirs forever," without mentioning her as his heir. It was held that M. J. Williams took by descent and not by devise.

So, also, in the case of *Hoover's Lessee* v. *Gregory*, 10 Yerg. 444, a testator had bequeathed certain property to his daughter by name, and to her heirs, not designating her as his heir; and it was also held that she took by descent and not by purchase.

From these considerations, we are clear that the devise over to the children of the testator is void, and that the case presented arises between the heir of the testator as such, and the devisee Mary Steely, untrammelled with the supposed rights of any devise over, after the termination of the estate devised to Mary Steely, and freed from any of the circumstances that have led to the conversion of a condition into a conditional limitation.

If the testator had devised the property to his wife, " during her widowhood," the words " during her widowhood " would have been words of limitation and not of condition, and would have set bounds to the estate devised, not cut down by any condition. *Harmon* v. *Brown*, 58 Ind. 207.

But such is not the language of the will. The words of the will, " to be hers during her natural life or widowhood," clearly import a condition in restraint of marriage, and the law renders that condition void, leaving the devise for life valid. The words " to be hers during her natural life" precede the conditional words, and limit the estate devised to the life of the devisee. They are clearly words of limitation, and they show an intent on the part of the testator that the devisee should hold for life unless the term should be cut down by what followed. Then follows the words " or widowhood." These latter words

signify that if the devisee should cease to be a widow the life-estate thus devised should also cease.

The word "condition" is not necessary to the creation of a condition. Any words that convey the proper meaning will create a condition.

The testator, to be sure, did not say "to be hers during her natural life, on condition that she shall continue to be a widow," but he said what signifies the same thing.

A condition is a condition, call it by what name we will. It is still a condition, though found in the specious and delusive guise of a limitation.

The faculty of speech, it may be assumed, was bestowed upon man to enable him to express, not to conceal, his ideas. The idea, the meaning of an instrument, is to be sought after, whatever may be the form of expression; and, when found, it will indicate the character of the instrument. Say that the language of the will creates, not a condition, but a conditional limitation, or a limitation upon a limitation, or an alternate limitation, or otherwise disguise its import as plausibly as we may, still the meaning is unmistakable; and that meaning is that the devisee, Mary Steely, is to have the property devised, " during her natural life," only on the condition subsequent, that she should continue to be a widow. This subsequent condition is void, as before observed, and the devise for life valid, though the devisee has since married.

The view which we have taken of the will, in construing the words "or widowhood," as importing a condition, rather than a conditional limitation, is not supported by all the authorities; yet it is sustained by authority and, in our opinion, is correct on principle. We will notice some of the authorities cited upon the point.

The case of *Marples* v. *Bainbridge,* 1 Madd. 317, was this: Thomas Marples bequeathed to his wife, Anne Marples, " should she survive and continue unmarried, all

his goods, chattels, estate, and effects at the time of his death, to · use, occupy, and possess the same during the term of her natural life, and from and immediately after her death," he disposed of the same. Anne Marples, having survived the testator, again married, and the question arose whether by such marriage she had not forfeited her right to the property thus devised to her. The Vice-Chancellor, after stating the case, said : " The cases are numerous on this subject. When there is a bequest, like the present, of personal property, upon a condition subsequent, and no bequest over on breach of the condition, the condition is considered only *in terrorem*. It has been argued, that this is not a condition, but a bequest till the second marriage ; but that is too refined a distinction ; nor will the court feel disposed to put such a construction on the will, as will occasion a forfeiture. The language imports a condition, just as much as if the words used, were, *if,* or *provided,* she continue unmarried. It must be considered as a condition subsequent. The testator's wife, therefore, is entitled to this property during her life," etc.

The above case is probably not now regarded as law in England, for the reason that it is now there held, as we have seen, that a husband may, as a condition to the bounty he may bestow upon his wife by his will, impose restraint upon her subsequent marriage. But, with such a statute as ours, the decision would be entirely correct ; and it is in point here in reference to the conditional character of the will.

In the case of *Binnerman* v. *Weaver,* 8 Md. 517, it was held that a devise that " my wife shall keep possession of all my property during the ·continuance of her life, provided she doth stay unmarried," without any bequest over in the event of marriage, gave the wife the property for life, the condition in restraint of marriage being void as against the policy of the law.

It may be observed that the condition in the above case, though perhaps more apparent, was no more real than that in the case under consideration.

In the case of *Coppage* v. *Alexander's Heirs*, 2 B. Mon. 313, the testator left a will, saying " I give unto my beloved wife, Mary Alexander, the half of my land I now own, *during her widowhood or life*," etc. The court said, among other things: "We are aware that it has been sometimes decided that a condition in the bequest or devise of a husband, in restraint of the second marriage of his widow, is, as in other cases where there is no devise over, to be construed *in terrorem*, against the policy of the law and void." Some authorities are cited, and the court proceeds: "Yet it has been frequently said, and we incline to think upon good reason, that a condition that a widow shall not marry, is not unlawful or void," etc. After discussing the point at some length, the court finally waives it, and decides that the words of the will are words of limitation and not words of condition, and that the estate devised to the widow terminated at her subsequent marriage. The case is not entirely parallel with the one before us, for the words " during her widowhood " precede the words " or life."

To what extent, if any, the difference in the two cases is substantial, we deem it unnecessary to enquire.

The counsel for the appellant have cited some cases from Missouri, which we will briefly notice. They are *Walsh* v. *Mathews*, 11 Mo. 131; *Williams* v. *Cowden*, 13 Mo. 211; and *Dumey* v. *Schœffler*, 24 Mo. 170.

In the first mentioned of these cases, one Joseph W. Walsh had made a will devising certain property to his wife for and during her natural life or widowhood. This language, it will be seen, is almost identical with that in the will under consideration. The testator having died, and his widow having again married, the question arose

whether her estate had not terminated, and the court held that it had. In the opinion, the court enter into a full discussion of the question whether a condition in restraint of marriage, annexed to a devise by a husband to his wife, can be upheld, and decide that it can. Indeed, such seems to be the general current of the decisions, where the matter is not controlled by statute. It is upon this ground that the case seems to have been mainly decided. But the court gave a construction to the words of the will, holding them to be words of limitation. In the opinion, it is said, after quoting and paraphrasing the language of the will : " Here then is a limitation on a limitation. The first clause of the sentence limits the estate to the natural life of the wife. The latter clause imposes a limitation on the former, and determines the estate upon the happening of a contingency which the testator foresaw might take place, to wit : the remarriage of his wife. If she did not remarry, then she was to enjoy a life-estate ; if she did, her remarriage determined her estate in the house and farm. During her widowhood she takes and holds under the first clause, the second being inoperative ; but, upon her second marriage, force and effect is imparted to the latter clause and her estate is determined thereby."

It seems to us, that the very statement of the court shows that the words of the latter clause import a condition rather than a limitation. " If she did not remarry, then she was to enjoy a life-estate." What is this but saying she was to enjoy a life-estate, if, or upon condition that, she did not remarry ? That the words were regarded by the same court as words of condition, will be noticed hereafter, in this opinion.

In the next case, that of *Williams* v. *Cowden, supra,* the testator had devised certain real estate to his son and daughter, in equal moieties, with a provision that if the daughter should marry or die, the land should belong to the son

exclusively. The daughter having married, the question arose whether the moiety devised to her went over to the son or remained in her; and the court held that it remained in her, the condition in restraint of her marriage being void.

In *Dumey* v. *Schœffler*, *supra*, the last of the Missouri cases, one Henneger had made a will containing the following clause: "I give and bequeath unto my wife Sarah, the whole of my estate, both personal and real, during her life or widowhood; but if my wife should again marry, so soon as the same takes place, my whole estate, both real and personal, I give and bequeath to John and Sarah Dumey, a boy and girl living with me, to be equally divided among them."

The widow of the testator having remarried, the question arose whether her right in the property devised had not terminated. The opinion of the court commences as follows:

" *Walsh* v. *Mathews and Wife*, 11 Mo. 134, determined here in 1847, is a direct authority in point, and must control our present judgment. That case is not shaken by the subsequent case of *Williams and Williams* v. *Cowden*, 13 Mo. 211, from which it is clearly distinguishable. The first is a condition annexed by a husband to restrain the marriage of his widow, and the second by a father in restraint of the marriage of his daughter. Both were annexed to testamentary dispositions of real property; and the first was allowed, and the second declared to be unlawful as being against public policy; and although the point is settled by the previous judgment of this court, yet as the matter has been argued somewhat at large, we have re-examined the question and are entirely satisfied with the first decision."

Here is a clear and definite recognition of the fact that the will in the case of *Walsh* v. *Mathews* contained a condition in restraint of marriage. The court then proceed

to re-examine at length the validity of such condition in respect to the widow of the testator, and reaffirm its validity.

On the whole, the Missouri cases tend strongly to support, rather than to militate against, the conclusion at which we have arrived in respect to the conditional character of the devise in question.

The cases of *Heath* v. *Lewis*, 3 De G. M. & G. 954, and *Evans* v. *Rosser*, 2 Hem. & M. 190, have been cited. In the last mentioned case, a devise had been made by which, as construed by the court, "the plaintiff is to take during his life or until his second marriage." The plaintiff having married a second time, it was held that his estate terminated. It may be observed that there was a valid limitation over, upon the second marriage of the plaintiff.

The Vice-Chancellor said, among other things: "In *Heath* v. *Lewis* the gift was to a lady for life, if she should so long continue unmarried, and it was held that it was a limitation until marriage, and not a gift defeasible on subsequent condition, and so in all cases where you do not find the words of the precise kind which would import a strict condition, you are able to escape the difficulties which have sometimes been the occasion of embarrassment. The whole difficulty, of course, arises from the refined distinction that limitations until marriage may be good, where limitations defeasible on marriage would be bad.

"I should have taken more time to consider my judgment if on the point of contention, I had held this to be a condition subsequent defeating the estate. But I read it as a gift whose duration depends on two alternatives, and that being the nature of the limitation, it is perfectly good, and in the event that has happened the plaintiff's interest is determined."

The assumption in the foregoing extract, that "words of

the precise kind which would import a strict condition " are necessary to create a condition, seems to us to be contrary to the general current of authority in this State and elsewhere. Thus in *Lindsey* v. *Lindsey*, 45 Ind. 552, 561, this court said, quoting from Williams on Executors: " No precise form of words is necessary in order to create conditions in wills; but whenever it clearly appears that it was the testator's intent to make a condition, that intent shall be carried into effect," and a number of additional authorities are added.

When the condition is created by the will, the question whether it is valid and effectual or not must depend upon the law applicable to the case, and not upon the intention or purpose of the testator.

Other authorities are cited by counsel for the appellant, in reference to the construction of the will, which, in view of the length to which this opinion has already extended, we deem it unnecessary to notice herein. We are satisfied that the will embodies a clear condition in restraint of the marriage of Mary Steely, though clothed in the form of a limitation upon a limitation or an alternate limitation. To hold that the restraint thus imposed upon the marriage of the devisee is valid, and that, in order to the enjoyment of the estate devised to her for life, she must remain a widow, would be a palpable evasion of the statute, and a thwarting of the purpose of the Legislature in enacting it.

We desire to say, before closing this opinion, that we do not decide that a different conclusion would have been reached had there been a devise over after the marriage of Mary Steely. It will be time to decide such question when it shall arise. We have found the case to be one where there was no valid devise over, and have considered it accordingly.

The demurrer to the complaint was properly sustained.

The judgment below is affirmed, with costs.

Petition for a rehearing overruled.