ANNE LONG *et al. vs.* SARAH A. PFLUGER *et al.*

IN EQUITY. BEFORE ALLEN, C.J.

MAY, 1872.

A condition in restraint of marriage, in a trust deed, made by a husband for benefit of his wife and children, held to be void, so far as it tends to forfeit the widow's interest in the estate.

Widow's claim for dower held to be repugnant to provisions and intent of trust-deed made for her benefit, and disallowed, she having failed to elect between the deed and her dower within the statutory period.

A son by former marriage held to acquire no title under a trust-deed made for benefit of second wife and her children.

Trust-deed held to be terminated by marriage of the widow for whose benefit it was made; and the property decreed to be divided among the beneficiaries, the widow to have a life interest in one-third.

DECISION OF ALLEN, C.J.

The complainants in this bill in equity are Anne Long, wife of Thomas Long, late widow and relict of Joseph Booth, of Honolulu, and Thomas Long, her husband.

It is alleged in the bill that the said Booth was, in his lifetime, and at the time of his death, seized and entitled and in possession of divers messuages, lands and hereditaments, situated in the Island of Oahu, and that the said Joseph Booth and Anne Booth had, while living together as man and wife, to wit, on the 30th day of April, 1866, entered into an indenture, of which Joseph Booth was the party of the first part, Anne Booth, wife of said Joseph Booth, of the second part, and John Montgomery and H. A. Widemann, trustees, of the third part. It is set forth in this indenture that the said Booth was the owner of lands known as the Pauoa premises, and situated in Pauoa Valley, and which was then occupied by him as a family residence; also, that he was the owner of certain other premises, known as the National Hotel premises, situated at the corner of

Nuuanu and Hotel streets, in Honolulu, and also the owner of half a herd of cattle, then being pastured on a tract of land leased by John Booth, at Waianae, Oahu; and the said Joseph Booth being in delicate health, and finding himself no longer able to conduct and manage said property and the business of said National Hotel, has, with the consent and approval of his said wife, testified by her being a party to, and executing, an indenture of settlement, consented and agreed to convey, assign and assure to said trustees and their successors all the above recited real and personal estate, and also all the personal property on said estates; and that he did convey same to the said trustees for the purposes set forth in the said indenture; that is to say, in trust as to said Pauoa premises, for the use and occupation of said Joseph Booth and his wife Anne Booth, and their children, so long as they, or any of them, desire or find it expedient to reside thereon as a family homestead and residence; and that the said Anne Booth was to have the sole and individual control and management of the same, free from, and not subject to, the debts of said Joseph Booth, subsequently contracted by said Booth, and said Anne was to receive all the profits and rents arising from said estate, real and personal, and if there were grandchildren, they were entitled to a residence and maintenance on the said Pauoa premises. The said Anne Booth was authorized also to dispose of the cattle at Waianae from time to time, as she might deem expedient, and by this indenture it is premised that the said trustees, on the decease of the said Joseph Booth, shall convey and assign all the said Pauoa premises, with the stock and personal property thereon, to the said Anne Booth, in trust, and for the same purposes as before set forth in the said indenture, namely: as a family residence and homestead for their children and their issue.

In relation to the National Hotel premises, it is declared and agreed that the said trustees shall continue and carry on the business thereof as a hotel and retail spirit establishment, so long as the same shall continue remunerative, and take and receive all the receipts and gross proceeds of the same; they,

the said trustees, having the sole and entire control of the same in all departments, and that they shall pay and apply such receipts and proceeds in manner following, that is to say: In the first place, to pay all current expenses of the said concern, for stock, wages, and other disbursements incident to the deed of settlement, and carrying the same into effect; and in the next place, to pay to the said Anne Booth, on her own sole and separate receipt, the sum of $200 per month for the support and maintenance of the family at Pauoa, and the education of the children of the said Joseph Booth and Anne Booth, her said sole and separate receipt to be a sufficient acquittance for such monthly payments by the said trustees; and in the next place to pay and discharge all simple contracts, debts, and liabilities now due by the said Joseph Booth; and also, all interest due and to grow due, from time to time, on a certain mortgage of the said hotel premises, for $5000, now held by C. R. Bishop, and another mortgage of the same premises for the sum of $4000, to James Robinson & Co.; and in the next place to apply the residue of said proceeds and receipts from said hotel to the necessary repairs, and if any surplus remains, apply the same in the liquidation and eventual payment of the amounts due on the said two above-named mortgages, with power to lease at public auction, with the written approval of Mrs. Anne Booth.

And it is further declared and agreed that when the full amount due on the said two mortgages shall have been paid, that then the said trust shall cease and determine, and that the said trustees or the survivor of them, or their successors for the time being in whom the said trust may then be vested, shall forthwith convey and assign to the said Anne Booth all the said hotel premises, with all personal and other property therein or thereto appertaining, freed and discharged of all manner of incumbrances, the same to be held by her upon trust, for herself and the children of herself and the said Joseph Booth, in the proportions following, that is to say: One-third part thereof for the use of the said Anne Booth during her natural life, provided

she shall remain unmarried; and as to the remaining two-thirds thereof, for the use and benefit of the children of the said Joseph and Anne Booth and the issue of those of them who may have died, such issue to have the share to which the parent would have been entitled to. And on the decease or marriage of the said Anne Booth, if she shall survive the said Joseph Booth, then that the one-third interest in said hotel premises, hereby given to her, shall therefrom become the property of the said children of the said Joseph Booth and Anne Booth, in like manner as last above provided as to the two-third part or share thereof.

It is alleged further, that the said Joseph Booth died on the 9th day of February, 1868; that administration was had on his estate, and that Anne Booth was appointed guardian of the persons and property of Emma Catherine Booth, Harriet Charlotte Booth, Grace Alice Booth, Clara Booth, William Booth, Ida Elizabeth Booth, Frederick Pfluger Booth, and Charles William Booth, the minor children of the said Joseph Booth and Anne Booth; that since such appointment as guardian, Harriet Charlotte Booth, one of the above minors, has deceased.

That subsequent to the decease of said Joseph Booth, said Anne Booth sold his interest in a certain herd of cattle running at Waianae, namely: an undivided moiety, and represents that the money arising therefrom was appropriated towards the payment of the then other existing debts of said estate; that said Emma Catherine Booth has now attained the years of legal majority.

That previous to the marriage of said Anne Booth to said Joseph Booth, he had been married and had issue, John Booth, who survived his father, and deceased on the 13th August, 1871, leaving a widow, Wahinealoha, and no children. That said John Booth deceased subsequently to said Harriet Charlotte Booth, and became co-heir to his said half-sister, and on the decease of said John Booth, his said wife Wahinealoha has become entitled to the interest in the said estate which said John Booth derived from his said half-sister.

That the said John Booth, in his lifetime, entered into an agreement with Hermann A. Widemann and said Anne Booth, as administrators of the estate of said Joseph Booth, to assign to them all his right, title, and interest in the estate of his late father, in consideration of receiving the sum of $250; but that said complainants believe that said John Booth's proportion of the real estate of his father vested in himself immediately upon his father's death, and that the right of dower of his said wife, Wahinealoha, likewise vested in her, which said right has not been released, unless it shall be holden that the said deed made by said Joseph Booth on the 30th of April, 1866, divested said Joseph Booth of his estate in such a manner as to bar the inheritance of his son John Booth.

That the signature of said Anne Booth to the said deed of trust was made under great perturbation and great excitement of mind, and was not supposed or intended by her to alien or surrender any right to which she was by law entitled, and that there were no words in said instrument conveying her dower; and that the acknowledgment was not made by her in manner and form prescribed by law to release dower, nor was there any valuable consideration ensuing to her for the release of said dower.

That her signature to said deed of trust was made in the presence of her husband, as also her acknowledgment before the registrar of conveyances, under circumstances of the intensest excitement. That the words in said instrument in restraint of marriage are contrary to public policy and void, and that she is entitled, for her sole and separate use and benefit, to one-third of the rents, emoluments and profits of the said estate. And that she is entitled to receive from said trustees, after they shall have paid all current expenses of the said National Hotel, for stock, wages, and other disbursements incident to the deed of settlement and carrying the same into effect, the sum of $200 a month for the support and maintenance and education of the said children, and that her sole and separate receipt should be a sufficient acquittance of the same, notwithstanding her marriage.

That whensoever the debts, secured by the two mortgages referred to in said deed of trust, shall be paid and satisfied, said trustees, or the survivor of them, or their successors, ought to convey and assign to her, the said Anne Long, said hotel premises and all personal and other property therein or thereto appertaining, the same to be held by her upon trust for herself and the children of herself and the said Joseph Booth; one-third for herself, and two-thirds for the children and the issue of them that may have died.

That the provision in the said deed of trust, "that upon the decease or marriage of the said Anne Booth, if she shall survive the said Joseph Booth, then that the one-third interest in said hotel premises, hereby given to her, shall therefrom become the property of said children of the said Joseph Booth and Anne Booth, in like manner as last above provided as to the two-thirds part of share thereof," is without consideration to herself for her one-third interest for her dower, to which she is by law entitled, contrary to public policy and void as towards herself.

That it is not expedient for herself and her children to reside at Pauoa, but that it is expedient to rent the said premises, and that she is entitled to have one-third of the rents received therefor set apart for her own use, using the balance for the education and maintenance of such of her children as may be in need of the same.

That the defendants, Sarah Annie Pfluger and her husband C. F. Pfluger, claim that they, together with Emma Catherine Booth, Grace Alice Booth, Clara Booth, William Booth, Ida Elizabeth Booth, Frederick Pfluger Booth, and Charles William Booth, children of said Joseph Booth and said Anne Booth, are owners of all the lands and premises aforesaid, as heirs-at-law of the said Joseph Booth, and that complainants believe them so to be owners, except so far as their half-brother John Booth, and through him, Wahinealoha, his widow, has become entitled to a share thereof, subject to complainant's right of dower therein, and her rights acquired by virtue of the aforesaid deed of trust.

That complainant Anne Booth is the guardian legally appointed of the persons and property of said minor heirs of said Joseph Booth, deceased, and that she has a right of dower in the premises aforesaid, and is desirous of obtaining an allowance thereof, and prays that a guardian *ad litem* be appointed, and that said guardian be made party respondent to the complaint.

It is satisfactorily made known to the Court that H. A. Widemann surrendered his trusteeship, and William L. Green was appointed in his place.

The material portion of the answer of C. F. Pfluger and his wife, is a submission to the Court that Mrs. Booth, now Mrs. Long, after the death of her husband, should have elected within six months whether she would avail herself of the pecuniary provision made in the trust deed, or be endowed of the land of her husband; and further, that the Court apportion the rents of the Pauoa premises between Mrs. Long and her children, individually; and that Mrs. Long is entitled only to her dower, and is not entitled to any right in the property by virtue of the deed of trust.

They also submit that Mrs. Long and the trustees should account for the receipts and disbursements of the estate. They deny that Mrs. Long is entitled to the $200 per month from the National Hotel premises.

The guardian *ad litem* for the minors has made substantially the same answer as Mr. Pfluger and his wife have, and avers that it is immaterial whether the deed of trust was executed as alleged, or not.

The only points in the answer of the trustees which require special consideration of the Court are the submission of the question to the Court on the legal construction of the deed of trust, in this, whether they shall assign to Mrs. Long the hotel premises, after the payment of the mortgages, in trust for herself and children; and the proviso in the trust deed, which works a forfeiture of the interest of Mrs. Long in said estate in the event that she marries again; and whether the one-

third of the rents of the Pauoa premises should be set apart for the use of Mrs. Long.

In the answer of Wahinealoha, the widow of John Booth, she states that she is advised and believes that she is entitled to one-half of the share which descended to her said husband, John Booth, as heir to his said father Joseph Booth, and as heir to his half-sister Harriet Charlotte Booth, and that she claims such share accordingly, and her dower in such parts thereof as may have been disposed of by her said husband without her consent.

The first question of interest which arises in this case is this: Does the condition in the trust deed, in restraint of marriage, work a forfeiture of the complainant's interest in the hotel premises? It is stipulated in the deed of trust, that when the debts which were secured by mortgage on the hotel premises are paid, the trustees shall convey the same to Anne Booth, with the personal property thereto appertaining, and which she is to hold in trust for the benefit of herself and the children, in proportion of one-third to herself during life, providing she shall remain unmarried, and the remaining two-thirds for the children, but upon her decease or marriage, then the one-third interest in the hotel premises shall become the property of the children.

It is contended by the counsel for the complainants that this condition in respect of a marriage is void as against public policy. The authorities sustain the doctrine that conditions in general restraint of marriage are void on principles of public policy; but conditions are properly allowed in favor of such persons as may have a reasonable interest in the question of the marriage.

In the case of *Long vs. Dennis,* 4 Burrows, 2055, Lord Mansfield says that "conditions in restraint of marriage are odious, and are therefore held in the utmost rigor and strictness; they are contrary to sound policy. By the Roman law they are all void."

The Court in the case of *Lloyd vs. Lloyd,* 10 Eng. L. & E.,

139, say "that with respect to a wife, or a stranger, a testator may give an annuity to continue so long as she remains single and unmarried," and "that the law recognizes in the husband that species of interest in the widowhood of the wife as makes it lawful for him to restrain a second marriage."

A writer in the Albany *Law Journal* says very truly, that "conditions in restraint of marriage have given most trouble to our Courts, nor is the law on these questions quite yet settled."

The Supreme Court, in the case of *Parsons vs. Winslow,* 6 Mass., 169, say that "a devise to the testator's wife, of an annuity during her widowhood and life, was held to cease upon her second marriage by the testator's intention; but it was further held that such intention being *in terrorem* and against the policy of the law, as in restraint of marriage, it could not take effect, and that the wife was entitled to the annuity during her life-time, notwithstanding her second marriage, the same not being expressly devised over except to the residuary legatee, who was the heir-at-law to the testator."

Jarman, in his valuable work on Wills, says, vol. 1, page 839; "that it is impossible that the reader should receive, without some degree of jealousy, a plan for reconciling the cases (where this question is involved) where an eminent judge expressed an opinion that they were so contradictory as to justify the Court in coming to any decision it might think proper."

Redfield, second part of his work on Wills, says "that it depends wholly upon the inquiry whether the condition is reasonable in itself." He says further, "that the question as to what conditions affecting marriage are valid, must depend upon the circumstances of each particular case, and will be very materially affected by the consideration how far the condition was unfairly applicable to the relation of the parties and the peculiar views and situation of the donor and donee."

Amidst the conflict of authorities on this subject, there is no more just rule than that stated by Redfield, that the conditions which affect marriage shall depend upon the circumstances of each particular case.

In this case, as appears by the evidence, the husband had become dissipated and conducted his affairs recklessly, so that his wife became alarmed lest the estate might be ruined. In addition, she feared that he might alienate it from herself and their children, as he at times had threatened to do. In this frame of mind, she was solicitous to have the property secured from what she feared would be entire loss, and the condition is inserted in the deed of trust, that she shall lose the one-third interest for life in the hotel premises if she marries. Does not the husband attempt to exercise his control to an improper extent? By the statute she was entitled to the same interest in the hotel premises as given by trust deed, during life, and the husband had no power to defeat it. It may be said that she could have made her election and surrendered her rights under the deed of trust, and claimed her dower, but in that case, the advantages by the deed of trust, of a home for the children and more resources for the payment of the debts, and the ultimate security of the estate for the children, would have been endangered, and perhaps sacrificed.

Under the circumstances of the case, the deed of trust made a wise provision for the wife and children, and I regard this condition of forfeiture of the one-third interest in the hotel premises, in case of marriage, as void.

It is contended by the counsel on the part of the complainants, that the deed of trust was evidently intended to meet a present emergency or exigency, demanded by the peculiar circumstances of the case.

While this is admitted, it may well be asserted that its provisions were well calculated not only to secure the property from the bad management of Mr. Booth, and perhaps unwise alienation by him, but to save it for the support of the complainant and her children, and to secure the ultimate ownership of the estate, free from incumbrances, to the legal heirs. It is said that Mrs. Booth was under unnatural excitement, and therefore she should not be held to all the provisions of the deed, but virtually only for those which make for her benefit.

6

It must be taken together and sustained as a whole, unless there may be illegal conditions.

It is claimed by the complainants that Mrs. Long is entitled to dower in the estate, because there is no relinquishment of dower in express terms.

In the case of *Adsit vs. Adsit*, 2 Johns. Ch. 450, which the counsel has cited, and to which they have requested the especial attention of the Court, Chancellor Kent says "that the legacy is not declared by any express words in the will, to be in lieu of dower. The inquiry then is, whether such an intention in the testator is to be collected by clear and manifest implication from the provisions of the will: to enable us to declare such an implied intention, the claim of dower must be inconsistent with the will and repugnant to its dispositions, or some of them. It must, in fact, disturb or disappoint the will. This appears to be the result of a historical review of the cases upon this greatly agitated subject." There is no question of law upon which there has been a greater diversity of opinion in the Courts. At one time the doctrine was held that the wife was barred of her dower by an annuity secured upon the real estate, but this was subsequently annulled, so that the common law doctrine may be regarded as clearly stated by Chancellor Kent in the case cited, and now the question arises, is the claim for dower repugnant to the provisions of the deed of trust? There are certain purposes to be accomplished by it, namely, a homestead is reserved and an income provided for the support of the wife and children, with a reserve income, supposed to be sufficient to pay the incumbrances on the estate, so that it may ultimately be saved for their common benefit.

What is the effect upon the homestead to set apart one-third interest for her exclusive benefit? Does not this defeat the purpose of making a common home for the family?

Would it not make a divided interest between the mother and children, and perhaps render necessary an entire separation of interests between them? They have now a home with a common interest, which is wisely provided, and setting apart

one-third would be repugnant to the intent and purpose of the deed.

The dower is repugnant to the provision for the payment of $200 per month for the common support of the family from the estate of the National Hotel premises. If the one-third of the estate is set aside, this payment cannot be made unless a very important provision for the ultimate payment of the debts is defeated.

Pauoa is set apart for a home, and the income from the hotel premises is set apart to sustain it. By the terms of the trust, it is a common property for the purpose of making a home for the wife and children; a division of the property may defeat it, and is certainly repugnant to it.

It is further provided, that when the mortgages shall be paid on the hotel premises, the trustees shall convey the same, with all the personal property, to Anne Booth, in trust for the benefit of herself and the children of herself and the said Joseph Booth, one-third part thereof being for the uses of Anne Booth during her natural life, provided she shall remain unmarried, and the remaining two-thirds for the use and benefit of their children and the issue of those who may have died, such issue to have the share to which the parent, if alive, would have been entitled. And upon the decease or marriage of the said Anne Booth, then the one-third interest in said hotel premises shall become the property of the children in like manner as the two-thirds part.

If the dower is assigned now, does it defeat the provision made for the widow of one-third interest for life in the hotel premises after the debts are paid, or is this in addition? If, besides this interest, she is to be allowed dower, there is left one-third interest for the children, all of which is in her own hands in trust. This is entirely inconsistent with the provisions of the trust. It defeats the whole purpose of a home and support for the children, and the payment of the debts, which is so important to all parties in interest.

In the case of *Allen vs. Pray*, 12 Maine, 138, the husband devised to his wife one-third part of all his real estate during

her natural life, also one-third part of his personal estate, to
hold to her heirs and assigns forever.

It was contended in this action, to recover dower, that in a
testamentary provision, in order to bar the right of dower, it
must appear in express terms to be in lieu of dower, or so
repugnant to the provisions of the will as to disturb and defeat
them.

The Court say that if besides the testamentary interest of
one-third, she is to be allowed dower, instead of a remainder of
two-thirds for the children and grandchildren, there will remain
one-third or four-ninths of his testamentary interest contributed
to dower. This claim, therefore, clearly disappoints the will, and
is inconsistent with it.

In the case of *Perkins vs. Little*, 1 Greenl. Rep., 135, the
husband devised to his wife one-third part of his real estate, to
hold during the term of her life, and after providing for the
payment of his debts and certain legacies to his children, he
bequeathed to her one-third part of the residue of his personal
estate. In this case the party did not claim to hold under the
will, and her dower also.

In the case of *Reed vs. Dickinson*, 12 Pick., 146, the Court
held that under the statute, the provision made by the will,
instead of being presumed to be a bounty in addition to dower,
according to the English rule, will be presumed to have been
given instead of dower. By the rule of the common law,
Justice Morton says, "that a devise or bequest to a widow is
presumed to be in addition to her dower, unless it clearly appears
that it was the intention of the testator that it should be in
lieu of dower. By our statute this presumption of law is re-
versed, and the provision in the will is deemed to be in lieu of
dower, unless it plainly appears that the testator intended it to
be in addition to it."

This is the construction given by the Court to a provision on
the statutes of Massachusetts, which is almost in the same
words as the provision in our code, which is doubtless a
transcript of that of Massachusetts. This ruling is in accord-

ance with the provisions of the code, which declares that the widow shall not be entitled to both unless it plainly appears by the will to have been the intention of the testator that she should have said provision in addition to her dower. Civil Code, sec. 1312. The distinction is palpable.

The counsel for the complainants contend, that by the trust deed it must be in terms set forth that the pecuniary provision is made in lieu of dower, while the code provides that it must plainly appear that it was the intention that the widow should have the pecuniary provision in addition to her dower. The Court is clearly of opinion that not only it does not appear that it is in addition to the dower, but that it is clearly repugnant to the general purposes of the indenture.

The widow is always protected from injustice by having the election of the provision made for her, or of the endowment. A thorough examination of our code would frequently save counsel great labor in the examination of foreign authorities.

By the deed of trust, it is very clear that the whole property therein described is conveyed for the benefit of Mrs. Booth and the children of herself and Joseph Booth. It is entire alienation of the property for that purpose, and therefore John Booth, the son of a former marriage, has no interest in it. The conveyance expressly declares that the said Pauoa premises are conveyed in trust for the use and occupation of the said Joseph Booth and his wife Anne Booth and their children, as a family homestead or residence, and after the death of Joseph Booth the same property is to be conveyed by the trustees to Anne Booth in trust, as a family residence and home for herself and children. The hotel premises are conveyed in trust for the exclusive benefit of Anne Booth and the children of herself and husband, Joseph Booth, the purposes of which are fully set forth in the indenture.

This indenture excludes title in any one else save the parties therein especially named. The Court is of opinion that John Booth had no right of inheritance in the property described in said indenture, and therefore his wife Wahinealoha has no right of dower in the premises.

This I regard as the legal right of the parties, but it appears in evidence that the trustees paid the sum of $250 to John Booth to relinquish his claim on the property, so that if there was an equity in the case, the said John Booth has had the benefit of it.

It is alleged further, that Harriet Charlotte Booth died subsequently to her father, and while John Booth, her half-brother, was living, and that she had interest in the property in common with her mother, her brothers and sisters, limited to her support in the family, at least until the debts were paid, which has not yet been done. He was equally entitled with the children of their common father, to inherit an interest in her estate. There is an equity that his widow should have her rightful portion with his brothers and sisters.

What is the proper portion of the mother who holds this estate in trust for the support of the children living with her, in view of the care and responsibility which she incurs? This will be considered when the accounts are rendered.

While she has the entire control of the whole fund, she is responsible that it be expended for the common benefit of herself and children, but when they become of age, and marry, it seems reasonable that they should have such a portion as would not injure the purposes of making a home for those who do remain.

The claim of Sarah Anne Pfluger, who is the daughter of Joseph and Anne Booth, and married, and who lives separate and apart from the family, has an equitable interest in the income which was set apart for the support of the family.

Upon the issues made, it is the opinion of the Court that the condition in the trust deed in restraint of marriage does not work a forfeiture of Mrs. Long's interest in the estate, and for this purpose is void, but the Court regards as legal and reasonable the condition in restraint of marriage which defeats the continuance of the trust, after the debts, secured by mortgage on the hotel premises, are paid, and so adjudges that the estate shall then be settled, giving Mrs. Long her one-third,

in trust, for her life, and the heirs their interests according to law. Mrs. Long had the right, under the code, within six months after the death of her husband, to make her election whether to avail herself of the pecuniary provision made to her by the trust deed, or of her right of dower. She did not avail herself of this right, and it is barred by this omission. Mrs. Long's interest, therefore, in the property, is limited to the provisions of the trust deed.

I am of opinion that John Booth had no interest as heir in the property conveyed in the trust deed at the decease of his father, and therefore his wife is not entitled to dower in the same. He had a right of heirship in the portion of the property belonging to his sister Harriet Charlotte Booth, deceased, and that his wife Wahinealoha is entitled to one-half of that interest.

The Pauoa premises were dedicated by the trust deed as a homestead, but as Mrs. Long has rented the same, she must account for the rents and profits in the same manner as for any other income; but as there is no evidence of demand having been made on Mrs. Long by the parties for their portion, and as the receipts from the trustees were to be applied for the common support of herself and children, and more especially as they had a right to avail themselves of the advantages of the common homestead, but as they did neither, it would be inequitable at this time to call for the portions to which they might have been entitled in the past.

It was the intention of the donor to make a home for his wife and children, and for the better accomplishment of this purpose, he apportioned Pauoa premises for the homestead and $200 per month income from the hotel premises to sustain it, and that when the debts were paid, the whole estate should be conveyed to his wife to be held in trust for herself and the children, and that she should enjoy one-third, and the children two-thirds, provided she remained unmarried.

This condition does not conflict with any of the rights of the party which she possessed prior to the execution of the deed of

trust, and it is in accordance with the general spirit of the law. It is a condition that a father may reasonably make, that when the wife contracts new matrimonial relations, that she should surrender a charge which she might not execute so satisfactorily as if she remained a widow. It is a condition which the law recognizes as reasonable and just, and therefore the Court so adjudges, that when the debts secured by mortgage on the hotel premises are paid, the estate shall be divided among the children, reserving one-third interest for the use of Mrs. Long during her natural life.

As the portion of Mrs. Pfluger and Wahinealoha are small, the Court orders that an account be rendered by Mrs. Long, of the receipts of the property and their disbursement, to the Clerk of the Court, quarterly, commencing on the first day of May, 1872, and the trustees are ordered to make a full account of receipts and disbursements for the same period.

The Court will then make an equitable division to the parties in interest.

*R. H. Stanley & F. H. Harris,* for complainants.
*Edward Preston,* for defendants.
Honolulu, May 4th, 1872.